THE PEOPLE, on the relation of E. G. Oelricks, *vs.* THE SUPERIOR COURT OF THE CITY OF NEW-YORK.

Where a subordinate court *grants a new trial* on the ground of *newly discovered evidence*, and it appears from the return to an alternative mandamus that the party in whose favor the new trial was granted was *chargeable with laches,* and that the evidence alleged to be newly discovered was *cumulative,* this court will grant a *peremptory mandamus* to vacate the rule granting a new trial.

A party is chargeable with *laches* who, previous to the trial, knew that the witness whose testimony he seeks to introduce as newly discovered, must probably from his situation and employment at the time of the transaction, the subject of the controversy, be conversant with the facts in relation to the transaction, and especially where previous to the trial the party knew, as the witness himself testifies, what the witness could testify to, although at the time of the trial and while preparing therefor, the party had *forgotten* what the witness could testify to.

Evidence is *cumulative* when it goes to the *fact principally controverted* on the former trial, and respecting which the party asking for a new trial produced testimony on the trial of the cause, as in this case, where the turning point of the cause was, whether a bill of exchange was or was not left at a bank for collection before *noon* of a certain day, and both parties produced testimony as to the *time* when the bill was left, *it was held,* that the evidence of a witness not produced on the trial, corroborating and supporting testimony which was adduced that the bill was left *after noon,* was cumulative.

Where a subordinate court sets aside a verdict as *against evidence,* or refuses to set it aside on that ground, this court will not interefere by mandamus, except in extreme cases where there is no dispute about facts, and the court below consequently has no discretion to exercise.

A mandamus will not be awarded where the subordinate tribunal has an *absolute discretion* without other control than its own judgment, as where *criminal courts* are authorized in their *discretion* to fix the period of imprisonment of convicts within certain periods, or to impose fines within certain amounts, or where *supervisors* have power to audit accounts and fix the amount; but where the law has given to parties *rights* as growing out of a certain state of facts, there discretion ceases, and if the tribunal charged with the matter commits an error, its acts will be reviewed.

DEMURRER to return to an alternative mandamus. The justices of the superior court of the city of New-York having ordered a *new trial* in a cause on the ground of *newly discovered testimony,* the party who had obtained the verdict applied to this court for a mandamus, directing the court below to va-

NEW-YORK,
May, 1833.

The People
v.
Superior Court
of New-York.

cate *the rule* granted by them; an alternative mandamus was awarded and served, to which a *return* was made by the court below, in which was set forth the affidavits on which the motion for a new trial was made, and also the affidavits read in opposition. The substance of the first set of affidavits is stated in the report of the case granting an alternative mandamus in 5 *Wendell*, 114, which, for the purpose of presenting a connected view of the case is here repeated. From those affidavits it appeared an action of assumpsit was brought in the superior court of the city of New-York, in favor of E. G. Oelricks against The President and Directors of the Phœnix Bank, to recover the amount of a bill of exchange for $2,500, drawn by one Heckscher, in favor of himself, on N. Pearce of Baltimore, payable at sight and endorsed by Heckscher to the plaintiff; which bill of exchange was deposited with the defendants for collection, and the amount thereof was claimed from them on the ground of neglect in transmitting the bill to Baltimore, by reason whereof it was alleged that the bill had not been paid. The bill was left at the bank on *Saturday*, the thirtieth day of May, 1829, and was not forwarded until *Monday*, the first day of June. Had the bill been forwarded on Saturday, and reached Baltimore in due course of mail, it would have been paid; but not being forwarded until Monday, when it reached Baltimore the drawee had failed. The defence relied upon at the trial was, that the course of business of the Phœnix Bank in relation to bills and notes, payable out of the city of New-York, left at the bank for collection, was, to forward them per mail on the same day they were left, to the places on which the bills were drawn, or at which the notes were payable, provided they were left at the bank before the hour of *twelve o'clock at noon*, and that the bill in this case was not left until after that hour.

On the trial of the cause, *Heckscher*, the drawer of the bill, testified that he left the bill at the bank on *Saturday*, the 30th May, 1829, a short time *before twelve o'clock*, and, as he thought, about half past eleven o'clock, and that he was at the bank but *once* on that day. He detailed a variety of circumstances which induced him to speak with certainty as to the particulars of the transaction. On the part of the defendants,

Mr. *Delafield*, the cashier, testified that about *eleven o'clock* in the morning of the 30th May, Heckscher called on him in the bank, and asked him whether he could transmit a bill on Baltimore on that day ; that he told him that if the bill was sent to the bank before twelve o'clock of that day, it would be attended to. Heckscher did not deliver the bill to him, nor did he see it until *Monday* after ; he further testified that he saw Heckscher only *once* at the bank on *Saturday*. *T. Davis*, a teller in the bank on the 30th day of May, testified that it was his duty to receive all foreign bills and notes left with the bank for collection ; that he received the bill in question on that day ; that it was handed to him *between twelve and one o'clock*, nearer one than twelve ; that if the bill had been left with him before twelve o'clock, it would have gone on by that day's mail. He was confident as to the delivery of the bill to him, the matter having been much talked of at the bank, and it having made a strong impression upon him. *T. Hook*, a clerk in the bank, having charge of the accounts of foreign credits, testified that on *Tuesday*, the *second* day of June, Heckscher called at the bank and enquired whether the amount of the bill in question was passed to his credit ; he told him that his inquiry was too soon, that they would not know the fate of the bill until *Thursday*, it not having been sent on until Monday. Heckscher said he had expected the bill would have been forwarded on Saturday, but found no fault, and expressed no censure that the bill had not been forwarded on Saturday, but appeared very anxious to ascertain its fate. Under a charge from the presiding judge that if they believed that the bill in question had been left with the defendants *before twelve o'clock* they ought to find for the plaintiff, otherwise for the defendants, the jury found for the plaintiff.

A motion was then made for a new trial, on the ground of newly discovered evidence. The defendants produced an *affidavit* of one Edward Russell, in which he deposed that on the 30th May, 1829, he was a clerk in the Phœnix Bank, and kept the book in which all foreign bills and notes left in the bank for collection were registered ; that the course of business of the bank in relation to the receipt and transmission of

*Margin note:*

NEW-YORK,
May, 1833.

The People
v.
Superior Court
of New-York.

such bills and notes was as follows : the bills and notes were handed by the dealers with the bank in the first instance to the third teller, were entered by him in the dealers' book and placed in a pigeon-hole appropriated to the reception of such bills and notes; that they were then taken by him the *deponent*, entered in the register kept by him, and handed to the cashier to be transmitted to the places on which the bills were respectively drawn, or at which the notes were payable ; who accordingly transmitted them on the same day, if they were handed into the bank at or before twelve o'clock.   He further deposed that his position in the bank was at a desk immediately next to the desk of the third teller ; that on the 30th May, *T. Davis* was third teller, and that he and Davis on that day occupied their respective desks ; that on that day he saw Heckscher hand Davis a bill of exchange ; that this was at about one o'clock in the day as he believed, and, as he thought rather past one o'clock ; that Davis placed the bill in the pigeon-hole, from which it was taken by him the deponent ; but that this being subsequent to twelve o'clock he did not enter it in the register until the Monday following, when he did enter it and hand it to the cashier ; that he left the bank in November, 1829, and went to New-Bedford, where he has since resided ; and that Mr. Delafield, the cashier of the bank, knew where he resided.   The defendants also produced the affidavits of the president and cashier, and of the attorney and counsel of the bank, that until after the trial of the cause they did not know that the deponent *Russell* knew at *what time* on Saturday the 30th day of May, 1829, the bill in question was left at the bank, nor that he knew that is was handed to Davis, nor that he knew any fact or circumstance which was any way important to the defendants in their defence, and that they verily believed that all the other officers and directors of the bank were equally uninformed until after the trial of the cause as to the evidence which could be given by Russel in those particulars.

The affidavits read in opposition to the motion for a new trial were those of the counsel of Oelricks, and of *Edward Russell*, the person whose testimony was sought, whose affidavit had been taken under a judge's order on the application of the re-

lator. Russell in this affidavit stated the facts substantially as he had done in the affidavit made by him on the request of the other party, but *added* that he did not see *Heckscher* at the bank more than *once* on Saturday ; that he heard him converse with the third teller, and that he did not look at the clock at that time to ascertain the hour ; and that a few days after the transaction, Mr. Delafield, (the cashier of the bank) requested him to impress all the facts upon his recollection, and that Mr. Delafield knew that witness was acquainted with all the transactions, and therefore desired him to impress the facts as above stated.

The return concluded by stating that the rule ordering a new trial was granted upon good and sufficient cause according to the judgment of the court, and in the exercise of the discretion vested in it, and that therefore they had not vacated it. To this return the relator demurred. The demurrer was argued by

*B. F. Butler*, for the relator.

*H. Bleecker*, contra.

*By the Court*, SAVAGE, Ch. J. An alternative mandamus having been heretofore granted in this cause, 5 *Wendell*, 114, the defendants have made a return. To that return there is a demurrer and joinder. The facts are not varied from what they were when the alternative was granted. The points presented are the same formerly discussed. In the opinion delivered by Mr. Justice Sutherland, the whole case is fully examined, and the cases which are applicable, elaborately reviewed. Several principles are there sustained, both by argument and authority, and I shall accordingly consider as settled, 1. That a writ of mandamus lies where a party has a legal right, and no other appropriate remedy ; 2. That it does not lie to an inferior tribunal, in cases where such tribunal has the right of exercising its discretion ; 3. That the discretion which this court cannot control, is one governed by no fixed legal principles ; 4. That in all cases where an inferior

*Margin note:* NEW-YORK, May, 1833. The People v. Superior Court of New-York.

NEW-YORK,
May, 1833.

The People
v.
Superior Court
of New-York.

court is bound to proceed according to established legal principles, and it is alleged that an error has been committed, this court has power to issue a mandamus, and if error has intervened, the same obligation exists to issue the writ, as to affirm or reverse a judgment upon a return to a writ of error.

In the decision which we are to make, we are to be governed solely by legal principles; we have no discretion to exercise; and should we be mistaken in the law applicable to the case, our decision is subject to review.

New trials are asked for on various grounds. The most common are, 1. An error of the court in the decision of some question of law upon the trial; 2. An error of the jury in finding a verdict against evidence, or the weight of evidence; 3. On the ground of newly discovered evidence. There are many others, but they need not be here mentioned. When the trial takes place in a court of common pleas, and the court itself commits an error, that is to be corrected by a bill of exceptions and writ of error, not by mandamus. Should the jury err, and return a verdict against evidence, that error must be corrected in the same court where the trial is had, by motion for a new trial. In determining whether the verdict is against evidence or not, the court must necessarily exercise a discretion; there is no principle of law, strictly speaking, applicable. The question is whether certain evidence proves certain facts. If on this question the court draw different conclusions from those drawn by the jury, a new trial should be granted; and where a court has exercised its discretion in such a case, this court will not interfere. There must be something in the case taking from the court its discretion, to authorize the interference of this court, as in the case put by Mr. Justice Sutherland, where the testimony was clear and explicit, and uncontradicted, and yet a verdict against it, and a refusal to set aside such verdict. In such case there would be no discretion; every verdict must be supported by evidence; where it is not, the law gives to the party injured a legal right to have it set aside and a new trial ordered. Should any court possessing the power refuse to exercise it in such a case, it would be our duty to correct the error by mandamus. In such a case, where there is no dispute about facts, there is no

discretion to exercise. "When any thing is left to any person to be done according to his discretion, the law intends it must be done with sound discretion, and according to law ; and the court of B. R. hath a power to redress things that are otherwise done, notwithstanding they are left to the discretion of those that do them." 1 *Lill. Abr. 477. Jac. Law Dict. Tit. Discretion.* In another sense, discretion means the liberty or power of acting without other control than one's own judgment. *Webster's Dictionary.* Thus criminal courts punish offenders by fine and imprisonment, in their discretion, within the limits fixed by statute. For instance : no person can be sentenced to imprisonment in a state prison for a less term than two years. There are offences specified which are to be punished by imprisonment in a state prison not exceeding ten years. In such cases the courts in which convictions take place have an uncontrolled discretion to punish by imprisonment for any term not less than two, and not more than ten years ; and such discretion is not the subject of review in any other tribunal. So when it is declared that the imprisonment shall be for a term not less than ten years, (and there are such,) there the court may, in its discretion, sentence an offender for life, or any number of years more than ten. 2 *R. S.* 700. So too, when imprisonment in any jail is authorized and no specific fine is imposed, the court has a *discretion* given to it by statute to impose a fine not exceeding $200 in amount. The supervisors have power to audit accounts ; the *amount* is not the subject of review in any way ; on that point the supervisors have an uncontrolled discretion. On serving a capias ad respondendum in a bailable action, the sheriff is bound to take bail, but he has a *discretion* as to the person. So also a justice is to approve of a surety in an appeal bond ; in his *discretion* he approves of *A.* but not of *B.* These are cases of discretion in which there can be no appeal. But where the law has given to parties rights, as growing out of a certain state of facts, there discretion ceases ; if the tribunal charged with administering justice commits an error in such a case, its acts must be subject to review.

With respect to granting *new trials on the ground of newly discovered testimony,* there are certain principles which must be

NEW-YORK, May, 1833. The People v. Superior Court of New-York.

considered settled. 1. The testimony must have been discovered since the former trial. 2. It must appear that the new testimony could not have been obtained with reasonable diligence on the former trial. 3. It must be material to the issue. 4. It must go to the merits of the case, and not to impeach the character of a former witness. 5. It must not be cumulative. 4 *Johns. R.* 425. 5 *id.* 248. It cannot be denied in this case that the testimony offered was material to sustain the point of defence ; and that it is not liable to the objection that it goes to impeach the plaintiff's witness. Russell says nothing about the character of the witness Heckscher, but contradicts the fact sworn to by him. The grounds on which the motion for a new trial was resisted are, 1. That the defendants knew of Russell's testimony before the first trial, and might with reasonable diligence have produced him, or his testimony, by commission ; 2. That the testimony itself is merely cumulative. As to the question whether the testimony was in fact newly discovered, or whether, with reasonable diligence, it might not have been produced upon the former trial, the affidavits of the agents of the bank disclaim all knowledge that Russell was a material witness. I confess I think this part of the case very defective. The cashier certainly knew that Russell was the person whose duty it was to register the draft and deliver it to the cashier. He therefore was the person above all others who should have been enquired of as to the reason why the bill was not registered on Saturday. All the third teller had to do was to receive the bill and put it in the proper pigeon hole ; it is not probable, therefore, that he would note the time—that was not important as to his duties ; but it was all important as to the duty of the registering clerk, and yet, though the registry was in the hand writing of Russell, he was not enquired of. But this is not all ; Russell swears that the cashier knew what facts were within his (Russell's) knowledge, and had cautioned him to impress them upon his recollection. Mr. Delafield and Mr. Russell are in conflict on this point, and one of them must be mistaken. May they not be equally mistaken as to the hour when the bill was left for collection ? Mr. Heckscher swears that he was in the bank but once that day. In this he is not

contradicted; he swears also that he delivered the bill before twelve o'clock. Mr. Delafield swears Mr. H. was there about eleven, and the entry in his bank book made by the third teller, proves the delivery of the bill. It seems to me, therefore, that if Russell's testimony were produced, it would, with the third teller, only balance that of Heckscher and the cashier as to the time when the bill was delivered. It is certain, however, that the testimony of Russell was at one time before the trial known to the cashier; it was his duty to have remembered it himself, when he cautioned Russell not to forget it. If he had forgotten it, I think that is no reason for asking for a new trial. To open the cause upon such a ground, is liable to the objection that it would enable parties to prepare testimony for a second trial when they had seen the strength of their adversary's case and the weakness of their own, and thus open a door to perjury. Chief Justice Parsons says, in *Bond* v. *Cutler*, 7 *Mass. R.* 207, a want of recollection of a fact which by due attention might have been remembered, cannot be a reasonable ground for granting a new trial; for want of recollection may always be pretended, and may be hard to be disproved.

What appears to my mind an insurmountable objection to the granting a new trial in this case, is that the evidence of Russell is merely *cumulative*. The court below was of opinion that the testimony of Russell was not liable to that obtion. In the opinion of the court, which has been shown to us, it is assumed, that the question whether evidence is merely cumulative, depends principally upon the materiality of the facts or matters which that evidence is to disclose as respects the point in issue. The learned judge who wrote the opinion, says: " In my view of this objection, therefore, the true enquiry in this case is whether the newly discovered evidence establishes facts which bear directly upon the issue and were not in proof before, and which are in themselves so material to the question of the delivery and receipt of the bill at the bank, before or after twelve o'clock of the day on which it was deposited, as to afford a reasonable ground of belief that they might vary the result, or whether this further evidence merely superadds circumstances tending to confirm the for-

NEW-YORK, mer testimony, or goes to discredit the plaintiff's witness with-
May, 1833. out disclosing any new fact materially tending of itself to
The People establish the defence?" The question seems to resolve itself
v. into the enquiry, what is cumulative testimony? The defini-
Superior Court
of New-York. tion of the word *cumulative,* is "that augments by addition,
that is added to something else; in *law,* that augments as ev-
idence, facts or arguments of the same kind." *Webster's Dict'y.*
It is derived from the latin *cumulo,* to heap up, or *cumulus,* a
heap. According to my understanding of cumulative evi-
dence, it means additional evidence, to support the same point,
and which is of the same character with evidence already
produced. For instance: The defendants in the court below
proved by the third teller, that the bill in question was not de-
livered until after twelve o'clock; all subsequent witnesses
who prove the same fact, are *cumulative;* their testimony
is added to, or heaped up upon that of the first witness.
A review of some of the cases will show how this subject
has been considered. In *Price* v. *Brown,* 1 *Str.* 691, the
defendant proved a *payment,* having *pleaded it.* The plaintiff
moved for a new trial, upon affidavits, shewing the falsity of
the defence; but the court refused it, saying it would be of
dangerous consequence to suffer people to be setting up new
evidence, after they knew what was sworn before. Here the
court would not give the party a second chance to litigate the
question of payment, because he ought to have done it on the
first trial. The same ground of negligence was assumed in
*Gist* v. *Mason and others,* 1 *T. R.* 85; and *Cooke* v. *Berry,*
1 *Wils.* 98; *Varnon* v. *Hawkey,* 2 *T. R.* 113, 120. In the
case of *Steinback* v. *Col. Ins. Co.* 2 *Caines,* 129, the action was
on a policy of insurance, on the ship Catharine, at and from
Barcelona to Baltimore; one question on the trial, and to which
testimony was adduced, was whether the voyage actually in-
tended was not to Havanna or some place in the West Indies.
After a verdict for the plaintiff, the defendants moved for a
new trial, and one ground was that of newly discovered testi-
mony—that there were two witnesses who would testify as to
the destination of the Catharine. Mr. Justice Livingston
says: "This was the fact principally controverted on the for-
mer trial, and we are now applied to for another, merely be-

NEW-YORK,
May, 1833.

|The People
v.
Superior Court
of New-York.

cause all the witnesses who knew something of the matter have not been examined. Every one must perceive the inconvenience and delay which will arise from granting new trials upon the discovery of new testimony or other witnesses to the *same fact.*" The judge proceeds to state that if a new trial should be granted for this cause, two, three, four or a dozen trials might be asked for on the same ground. He also adds that there may be cases of great doubt as to the first trial, where the cause should be opened to discuss the same fact, and also that the witnesses named, if introduced, might not alter the result. All that the judge says hypothetically is surely no authority ; the point decided was that the court would not grant a new trial where the newly discovered testimony went to the same fact which was principally litigated on the former trial. The case of *Smith* v. *Brush,* 8 *Johns. R.* 84, was decided upon the same principle. There the defence was usury, and one witness was produced who proved it ; there were suspicious circumstances about his testimony, and the jury disbelieved it. The defendant moved for a new trial, on the ground, among others, of newly discovered testimony, which went, as stated by the court, merely to corroborate the former testimony, and did not relate to any new fact. The court here again declare that it is against the general rule of the court to grant a new trial for the discovery of cumulative facts and circumstances relating to the same matter which was principally controverted upon the former trial ; they say that it is the duty of parties to come prepared upon the principal point. The object of this testimony was to shew that usury was in fact taken, though the jury had found that there was none ; the court would not listen to it. In the case before us, the object is to prove that the bill was deposited *after* 12 o'clock, which was not only the principal, but the only point in issue on the former trial. The case of *Pike* v. *Evans,* 15 *Johns. R.* 210, was decied on the same ground. The question upon the trial was whether a suit of clothes had been left at the stage office in Utica, in season to be sent to Sackett's Harbor by the stage. The verdict was against the defendant. The newly discovered testimony, the court say, is material to make out the delivery of the clothes by the time agreed on,

and the only objection was that the testimony was cumula-
tive. They add that the newly discovered evidence did not re-
late to any new fact. How could it ? There was but one fact
in dispute—the seasonable delivery of the clothes ; that was
the only fact in the case on the part of the defendant. So
here, there was but one fact in dispute—the seasonable delive-
ry of the bill. The evidence in *Pike* v. *Evans* was material,
and so it would be here if the cause was again to be tried ;
but in that case it went to prove what had been the point of
dispute on the former trial. So it does here. In that case it
was rejected as cumulative. Why is it not cumulative in this
case ? In the language of the court in former cases, the tes-
timony of Russell does not relate to any new fact ; if it did, it
would not be pertinent. The only fact in dispute was the time
when the bill was deposited. Suppose a dozen witnesses offer
to swear that they were present, and the hour was one, is not
that cumulative ? The third teller so swore on the trial, and
Russell proposes to swear the same thing. Is not that cumu-
lative ? The case of *Sargent* v. *Denniston*, 5 *Cowen*, 114, 22,
will serve to illustrate my ideas on the subject of cumulative
testimony. A new trial was granted in that case, on the
ground, in part, of newly discovered testimony. The objec-
tion to this testimony was not that it was cumulative, but
that the defendant was guilty of laches in not producing it up-
on the trial. It was answered that there was no laches, be-
cause the defendant could not anticipate that the witness
would fix on a particular day, the 13th of June, as the day on
which the act was committed. But suppose the defendant
had in fact produced a witness on the trial who proved an *ali-
bi*, but who was disbelieved by the jury, and he had subse-
quently moved for a new trial on the ground that he had sub-
sequently discovered several witnesses to prove the *alibi*, that
would have been cumulative testimony, and a new trial would
not have been granted on that ground. So in this case, had
the defendants discovered witnesses who could have proved
that Hecksher was engaged in other business on the day when
the bill was deposited, at another place, until after 12 o'clock,
I think they would bring themselves within the principle of
the case of *Sargent* v. *Denniston*, and the testimony would not

be strictly cumulative. That would be a new fact, distinct from the bare question as to the time when the bill was deposited. But what are the facts to be proved by Russell? They are, that he was in the bank when the bill was handed to the third teller, and that some conversation passed between Hecksher and the teller; (in this he supports Hecksher and contradicts the teller, who says that no conversation passed;) that his desk was adjoining that of the teller; that he and the teller were in their places; that the teller put the bill in the pigeon hole, and he, Russell, took it out; and that letters for the post-office were sealed and ready to be sent. These are all the facts which Russell can swear to; and let me ask, what do they prove as to the *time* of day? It seems to me they prove nothing; they are circumstances which seem to give weight to the testimony which Russell may give as to the *time*. He swears this took place after one o'clock, and yet he did not look at the clock to ascertain the time. These facts of themselves prove nothing, yet, taken with the order of business in the bank, they are circumstances entitled to weight. But they are not such facts as are understood by new facts to sustain an action or a defence; they are strictly cumulative; they transpired in the bank where the bill was deposited; and the question of time is still to be determined by the positive testimony of those who testify in relation to that point.

This case must be decided by what is the law of our own courts upon the subject, though it is believed the practice of other courts is much the same. The supreme court of Massachusetts, in *Chatfield* v. *Lathrop*, 6 *Pick.* 417, 18, say cumulative evidence is such as tends to support the same fact which was before attempted to be proved. In that case, the court granted a new trial for the purpose of impeaching the principal witness of the defendant, but intimate that such motion would not be granted to receive cumulative evidence. Upon the whole case, therefore, I am satisfied that the discretion to be exercised by an inferior court, in granting new trials for newly discovered testimony, is not an *arbitrary*, but a *legal* discretion, and is therefore subject to review by this court; that the defendants in the court below had been guilty of

laches, in not procuring the testimony of Russell upon the trial; and further, that his testimony is merely cumulative; and that for these reasons a peremptory mandamus should be granted.