## SUPREME COURT.

HENRY C. ADAMS, appellant agt. PETER G. BUSH and JACOB G. BUSH, survivors of PETER G. GARLOCK, deceased, respondents.

A *new trial* on the ground of *surprise* and for *newly discovered evidence* will not be granted where the proposed new evidence is *cumulative* merely. What is *cumulative testimony?*

*It seems* that where on the decision of the general term denying a motion made for a new trial upon the ground of surprise and for newly discovered evidence, an application is made to the general term for a review of their decision, on the ground of a misapprehension or mistake of the facts of the case, such application will be entertained, as it is doubtful whether an appeal to the court of appeals will lie on such decision.

*Argued at General Term, Schenectady, January, 1862.*

*Decided at General Term, Plattsburg, Clinton county, May 1862.*

MOTION by plaintiff at the Montgomery special term, November, 1861, before Mr. Justice JAMES for a new trial upon the ground of surprise, and for newly discovered evidence. Motion denied. Plaintiff appealed to general term.

### Facts.

1st. Plaintiff obtained a judgment, against the defendants, by default, February 13, 1861, for $888.29, on a claim for professional services as attorney and counsellor in upwards of twenty causes, motions, proceedings, &c.

2d. The defendants moved, April, 1861, to open the default and for leave to answer, which was granted, and the cause referred to H. B. Cushney, Esq., sole referee.

Adams agt. Bush.

3d. The defendants alleged, as a third defence, that a portion of the services were under an agreement that if they failed on their appeal to the general term, in a certain cause, plaintiff would charge them nothing but "traveling fees;" and they did fail on appeal, and were not liable to pay for the services.

4th. On the trial, J. G. Bush, one of the defendants, testified to such an agreement, and that it was made at plaintiff's office at the time the bond on appeal was signed by Davis as surety, in April, 1859, and that Davis was present and took part in the conversation, and advised the appeal, &c., to the general term, upon the terms alleged by the defendants.

5th. P. G. Bush, the other defendant, testified to the alleged agreement, and that it was made in March or April, 1859, and was made at plaintiff's office when the first bond for the appeal to the general term was signed, but don't remember who was present.

On direct examination he said he had some talk with plaintiff about going to the court of appeals, &c.; on cross-examination, denied that he had any such conversation, or that plaintiff ever said one word to him about the court of appeals, and denied that he agreed to find a bondsman for the court of appeals, or that he was at plaintiff's office on two occasions when Davis was there, &c.

6th. Plaintiff was surprised by this evidence, and knew of no evidence to disprove such agreement, except his own, and he testified that he made no such agreement as they testified to in relation to the appeal to the general term.

That simple point-blank denial was all that plaintiff testified to, or could testify to, about the alleged agreement.

He then testified to various matters about a proposition to appeal to the court of appeals, which had no relation to the alleged agreement as to the appeal to the general term.

This proposition of plaintiff to appeal to the court of appeals was not accepted by the defendants and no agreement was made in relation to such appeal, nor was any appeal taken to the court of appeals. Only one surety (Davis) signed the undertaking for an appeal to the court of appeals before the time plaintiff made the proposition referred to, and this was in June, 1860. The defendant, P. G. Bush, declined, and denied having had any thing to do with an appeal to the court of appeals.

7th. The referee disallowed plaintiff's claims for those

services and disbursements on the appeal to the general term, alleging that plaintiff was out-sworn by defendants, and allowed the plaintiff $304.66 with interest from the commencement of this action for other services not disputed. His report bears date September 11, 1861.

8th. On the 1st of November, the plaintiff discovered new evidence of Davis and of Huffnail, which evidence was before unknown to him, and nothing like it given on the trial.    That evidence is stated in the case as follows :

" That the said Alfred B. Davis can testify to the following facts, to wit : that he, said Davis, was one of the sureties in the undertaking, on appeal to the general term, in the case of *Peter G. Bush et al., assignees of George Bush* agt. *Fox & Brookman* ; that said undertaking was executed by him on or about the 23d day of April, 1859, and was acknowledged by him on the same day ; that such execution was at the office of H. C. Adams, this plaintiff, and that said Adams was not present, but was away ; and that Henry Adams, the father of said H. C. Adams, was there and superintended the execution of said undertaking in the absence of said H. C. Adams ; that no conversation was had with said Henry Adams, nor with said H. C. Adams, on any subject relative to said H. C. Adams' charges for services ; and that said Davis never saw said Adams in conversation with either of the Bushes or Garlocks in relation to any matter of appeal, nor converse or hear him converse about the same, until said Davis was called by Jacob G. Bush to said Adams' office, on two or three occasions, to execute, as one of the sureties, an undertaking for an appeal to the court of appeals, and this was in the month of June, 1860 ; that on the last occasion said Adams proposed, after some reluctance on the part of P. G. Bush and James Garlock, to go further ; that he, Adams, would take the case to the court of appeals, and if Adams failed there he would charge them nothing, except his (Adams') traveling expenses and some other small items of expenses ; and at the same time

told said Jacob and Peter that the expenses for printing the case would be nothing, as he, said Adams, had had them printed for that purpose before the general term, and with the view of taking the case to the court of appeals if necessary; that said Davis never heard said Adams say anything about charges for services or traveling expenses, or the like, at any time except at the time he signed the bond or undertaking, in the month of June, 1860, for the appeal to the court of appeals."

That Daniel Huffnail, the other surety in the undertaking, on appeal to the general term, can testify to the following facts, to wit: "that he was called to H. C. Adams' office, by Peter G. Garlock, for the purpose of executing said undertaking, and did so execute the same on the 22d day of April, 1859, and that no person was present except said Garlock and said H. C. Adams, who gave him directions how to execute and acknowledge said undertaking, and that neither of the Bushes were present, nor any conversation had about the case, except as to the extent of said Huffnail's liability as such surety, and the manner of executing the undertaking."

The case further shows, " that such evidence has been discovered since the trial, and about the 1st of November, 1861, and was not previously known to the plaintiff to exist, and that the same is material and necessary to the plaintiff, and without which he cannot obtain his rights in this action, but will without the same be injured and damaged to the amount of several hundred dollars."

NOTE.—This evidence will prove an *alibi* of the plaintiff at the time the defendants alleged the agreement was made when Davis was said to be present and signed the first bond, and will prove *that Davis did not see plaintiff* in respect to *any* business of defendants until he came to sign the bond, June, 1860, for the court of appeals, over a year after the time stated by defendants. Also, an *alibi* of both defendants at the time Huffnail signed the bond; and if the parties were absent, of course the alleged agreement was a fabrication of the defendants to cheat the plaintiff out of his earnings and his large expenditures. It also disproves other matters testified to by defendants.

9th. Upon the newly discovered evidence the plaintiff

promptly moved, upon affidavits and papers, for a new trial, and the motion was promptly denied. The opinion of the court at special term appears in the following communication:

OGDENSBURGH, *November* 26, 1861.

H. C. ADAMS, ESQ.: Dear sir—I yesterday examined and decided your case with Bushes, denying the motion with $7 costs, on the ground that the evidence, which is shown to have been discovered, was cumulative.

The case is directly within *Steinback* agt. *The Col. Ins. Co.*, (2 *Caines*, 129;) *Graham & Waterman on new trials*, (*vol. 1, p.* 486.)

The case of *Seeley* agt. *Chittenden* (4 *How. P. R.*, 265,) is not now and never was law. It has been disregarded a hundred times or more. Yours, truly,

A. B. JAMES.

10th. From that decision this appeal is brought.

HENRY C. ADAMS, *appellant in person*, presented the following

*Points:*

1st. What is cumulative evidence?

1st. It is additional evidence of *the same kind* to the *same fact or point* which was in proof before. (*Glidden* agt. *Dunlap*, 28 *Main.*, (15 *Shep.*,) 379; *Kirby* agt. *Waterford*, 14 *Verm.*, 414; *Waller* agt. *Graves*, 20 *Conn.*, 305; *The People* agt. *The Sup. C. of N. Y.*, 10 *Wend.*, 285, SAVAGE, J., 293, 294; *Steinback* agt. *The Col. Ins. Co.*, 2 *Caines*, 129.)

In these and all other like cases the proposition was to prove, by additional witnesses, *the identical fact* once proved on the trial.

e. g. In the latter case the application was for a new trial, " on account of some other witnesses being discovered who could *further testify to the facts deposed to.*"

Of course, that was cumulative, and was not entitled to the name or character of newly discovered evidence; for that signifies, not *additional witnesses*, but *new* evidence of a fact or circumstance not before known; a newly discovered fact to which the party gave no evidence, and is entitled to have the benefit, that he may thereby obtain his rights.

2d. But evidence newly discovered, of a different kind and character from that adduced by the party on the trial, though tending to establish the same point in issue, is not cumulative. (*Aiken* agt. *Bemis*, 3 *Wood. & M.*, 348; *Burr* agt. *Palmer*, 23 *Verm.*, (8 *Washb.*,) 244; *Watts* agt. *Howard*, 7 *Met.*, 478; *Waller* agt. *Graves*, 20 *Conn.*, 305; *Vardeman* agt. *Byrne*, 7 *How.*, (*Miss.*,) 365; *Den* agt. *Wentermouth*, 1 *Green*, 177; *Barstow* agt. *Reynolds*, 37 *Eng. Law and*

*Eq. R.*, 468; *Seeley* agt. *Chittenden*, 4 *How. P. R.*, 265; *Guyott* agt. *Butts*, 4 *Wend. R.*, 579; *See the opinion of* MARCY, J.; *Simmons* agt. *Fay*, 1 *E. D. Smith*, 107.)

3d. Nor will the court refuse to grant a new trial on the ground of newly discovered evidence, for the reason that such evidence is cumulative merely, if it is sufficient to render clear that which was before a doubtful case; or the facts were not fully investigated. (*Barker* agt. *French*, 18 *Verm.*, (3 *Washb.*,) 460; *Burr* agt. *Palmer*, 23 *Verm.*, (8 *Washb.*,) 244; *Barstow* agt. *Reynolds*, 37 *Eng. L. and Eq. R.*, 468; *Waller* agt. *Graves*, 20 *Conn.*, 305; *Platt* agt. *Munroe*, 34 *Barb.*, 291; *Listen* agt. *Mundell*, 1 *Bos. and Pull.*, 427.)

2d. Testing this motion by the light of the principles and adjudications above cited, and the order at special term must necessarily fall to the ground.

1st. The plaintiff simply denied the alleged agreement, but was not heard upon any of the facts and circumstances related by the defendants' testimony as to when, where, or under what circumstances, or who was present at the execution of the first bond on appeal to the general term, April, 1859.

His other evidence, after denying the agreement alleged, was in relation to a *proposal* to go to the court of appeals, June, 1860.

Hence the newly discovered evidence of Davis and Huffnail was in no sense cumulative. (*See cases cited.*)

2d. The new evidence goes directly to prove an *alibi* of plaintiff, at the time Davis executed the bond, April 23, 1859, if that was the time referred to, or to prove an *alibi* of both defendants, at the time Huffnail executed it, April 22, 1859, if that was the time referred to. Those are not cumulative facts; they are new and material, and must be decisive of the case, for they go to disprove the main fact in question. (*Sargent* agt. ———, 5 *Cowen's R.*, 106, 122, 123; *Seeley* agt. *Chittenden*, 4 *How. P. R.*, 265, 268.)

3d. If the court are to indulge in the extravagant presumption that the defendants were *mistaken* as to the point of time, then the new evidence must be controling, for Davis never saw plaintiff in relation to *any* matter of appeal until June, 1860, in relation to the court of appeals, and neither of the defendants pretended that Huffnail, the other surety, was present at any time or knows any thing on the subject.

4th. Issues are usually established by a chain of facts and circumstances, and almost any conceivable proof may be made material as a link in a chain, and evidence, link by link, is constantly regarded in reference to the object it is intended to reach. It was by that mode that the defendants established, in the mind of the referee, the pretended agreement. Now if the plaintiff can by newly discovered evidence destroy one link in that chain, whether it be the first, tenth or hundredth, the chain is broken alike, and their pretence has not the support even of opaque testimony.

And if the plaintiff can add to his simple, point-blank denial of the alleged agreement, a chain of direct and newly discovered testimony, proving an *alibi* as to *all* the parties, and that the alleged agreement could not possibly have taken place, he should have his motion.

The law of new trials for newly discovered evidence has its foundation in the *rights* of parties, tested by the *merits* of their claims and the principles of com-

Adams agt. Bush.

mon sense. "The new trial is granted to ascertain what the merits of the action are." (CADY, J., 10 *Barb.*, 307.)

5th. The plaintiff made an attempt to destroy the defendants' evidence by a single, point-blank denial, that being all the evidence within his knowledge; and if the newly discovered facts could be added, his denial would be established beyond dispute. Having discovered those, and they being essentially of a different kind and character from any thing given on the trial, shall he be precluded from the benefit of them, and thus punished for his ignorance, because he made an attempt to establish his case by the best evidence within his knowledge ? That is not cumulative evidence in any sense, either legal or common, and it never has been so held in any reported decision, but the courts have uniformly held otherwise. (*See the case cited.*)

And even if he had known of his own knowledge, all the new facts, still he would not have been bound to confront the defendants in their detail of dates, places, conversations, and circumstances, and thus taken the hazard. It was his simple privilége, not his duty, to be a witness. (*Code,* § 399.)

This, however, is not important, for the decision was "that the evidence shown to have been newly discovered was cumulative." (*See order and opinion.*)

And that is the only question of which this court has appellate jurisdiction. (*Kelsey et al. agt. Western,* 2 *Comst.*, 500; *Code,* § 330.)

6th. The *equities* of this case are controlling. The defendants alleged an agreement without specifying time, place, or circumstances, and upon the heels of the trial produced *themselves* as witnesses to prove the allegation, detailing time, place and circumstances, and which plaintiff can prove, by newly discovered evidence, to be a fiction, supported by their own utterly false testimony. Their evidence of course was a great surprise to the plaintiff, and the defendants ought not to be permitted to retain an advantage they have so corruptly obtained. (*See* 4 *How. P. R.*, 267, 268, WILLARD, J.; 4 *Wend. R.*, 579, MARCY, J., *and other cases cited.*)

NOTE.—This case is similar to the case of *Fabrilius* agt. *Cock,* (3 *Burr,* 1771,) where the party, afterwards, discovered proof to detect the whole demand being founded in fiction *supported by perjury,* and that since the trial many circumstances had been discovered to detect the iniquity and to show the *subornation of the witnesses.* That case has been directly approved by this court as a case of newly discovered testimony. (*Duryee* agt. *Dennison,* 5 *John. R.*, 250, KENT, Ch. J.)

The order appealed from should be vacated, and the motion granted; and under the equities and peculiar circumstances, especially those last referred to, the costs should abide the event.

J. GENTER, *for respondent,* presented the following points and authorities :

1st. It is a well settled rule of law that a new trial will not be granted when the evidence is cumulative. (*Graham's Pr.*, 630; *Graham on New Trials,* 463, 506; *Smith* agt. *Brush,* 8 *John.*, 84; *Pike* agt. *Evans,* 15 *John.*, 210;

*Steinback* agt. *Col. Ins. Co.,* 2 *Caines,* 129 ; *The People* agt. *Superior Court,* 5 *Wend.,* 114; *Id.,* 10 *Wend.,* 285.)

The counsel for respondent referred to the principle stated *per* SAVAGE, C. J., in 10 *Wend. R.,* (289;) to the definition of the word cumulative (*p.* 294;) to the review on *pp.* 294, 295, of the case in 2 *Caines,* (129.)   He also referred to the cases of *Chatfield* agt. *Lathrop* (6 *Pick.,* 417, 418;) *Price* agt. *Brown,* (1 *Stra.,* 691.)   (Those cases are also reviewed *per* SAVAGE, C. J., in 10 *Wend. R.,* 294 *and* 297.)

2d. This case is briefly this : The defendants interposed separate answers to a portion of plaintiff's claim by setting up a special agreement, and each verified their answer, and each on the trial testified to the agreement as set up, and the plaintiff, on the trial denied making such agreement and at the time testified to by defendants, and the referee on this point found for the defendants.

The pretended newly discovered evidence is to the precise point made by the defendants' verified answers and by their testimony on the trial as well as plaintiff.

The testimony pretended to have been newly discovered was merely recollected, and is to corroborate plaintiff and disprove what defendants have testified to, and is to the identical point made on the trial, and is strictly cumulative merely.

Mr. ADAMS, in reply, presented and reviewed numerous cases.   He then insisted :

That in all the reported cases where a new trial was denied upon the ground that the evidence was *cumulative,* the proposition was to prove an *identical* fact or facts proved on the trial; *e. g.* taking the cases cited by defendants counsel :

1st. In *Smith* agt. *Bush,* (8 *John. R.,* 66,) the new evidence there proposed did not relate to any *new fact.* The question whether the parties met by accident or by preconcert (*p.* 67) was wholly unimportant, for it would not in the least degree have changed *the facts* that occurred.   In that case the court in calling the proposed new evidence cumulative, gave it a dignity that did not belong to it.   The motion should have been denied for an utter want of materiality.

Adams agt. Bush.

2d. In *Pike* agt. *Evans* (15 *John. R.*, 210) it was proved by several witnesses that the clothes in question were delivered at the stage office on a certain Saturday, *in due time*. The new evidence was to substantiate the delivery *in due time* (*see p.* 212.) The court held that the proposed new evidence did not relate to any new fact (*p.* 213.) The evidence was cumulative; clearly so.

But suppose the new evidence had been to prove some fact not disclosed on the trial, *e. g.* that the plaintiff's witness was not present at the time he alleged the defendant said " no," &c. (*p.* 211 *near the top*), or that defendant was not then present and could not possibly have said no; or that the " way bill " supposed to have been lost was found and showed the delivery at Utica, &c.; or that the clothes reached Sackets Harbor in season, but that they were by plaintiff's neglect there stolen or converted, etc., would either of those facts have been cumulative? No. They would have been different in kind and character and unlike anything disclosed on the trial, though tending to support the same issue.

3d. In *The People, &c.* agt. *Superior Court*, (5 *Wend. R.*, 114; *S. C.*, 10 *Wend. R.*, 285,) the point in controversy was whether the bill was left at the bank *before* or *after* 12 o'clock M., and the case was put to the jury *upon that point* (*p.* 116.)

On the part of the bank, the cashier, teller and clerk, each testified it was after 12 o'clock, and nearer 1 P. M. than 12 M. (*pp.* 115, 116.) The jury found for plaintiff. The bank then applied for a new trial proposing to prove Russell's *belief* that it was about 1 o'clock (*see near top p.* 117,) of course that was *cumulative* for the *identical fact* had been proved by the cashier, teller and clerk (*pp.* 115, 116.)

But suppose the new evidence had been to prove that Hecksher was not in the city of New York at the time he claimed, or any other new fact to show an *alibi* at the point of time in question, or that plaintiff's case was " founded in fiction supported by perjury," would that have been cumulative? (*See Duryee* agt. *Dennison*, 5 *John. R.*, 250, *citing and approving* 3 *Burr*, 1771; *Sargent* agt. *Denniston*, 5 *Cow. R.*, 106, *and see* SAVAGE, J. *in* 10 *Wend. R.*, 296, 297; *Seeley* agt. *Chittenden*, 4 *How. P. R.*, 265.)

No case has ever found its way in print holding that evidence newly discovered to prove an *alibi*, or *perjury, etc.*, was cumulative, and the simple proposition of the plaintiff in this case was to prove an *alibi* of all the parties at the time of the alleged agreement, and as a necessary consequence the corrupt and criminal fabrication of both defendants on the trial of this case. Such evidence was in no sense cumulative.

4th. In *Steinback* agt. *The Col. Ins. Co.*, (2 *Caines*, 129,) the motion was " on account of some other witnesses being discovered who could further testify to the facts deposed to." Clearly that was cumulative.

As a logical sequence, if the motion had been " on account of some other witnesses being discovered who could further testify to facts not deposed to," *e. g.* to prove an *alibi*, or to expose " a fabrication supported by perjury," it would not have been cumulative and the motion would have been granted.

In short there is no case in print on either side of the

Atlantic where a new trial was denied because the proposed evidence was cumulative, that is not subject to the same or similar criticism.

The proposition in all was to prove by additional witnesses the *identical* thing proved on the trial.

In truth, additional witnesses to prove the same fact is not in a legal sense, newly discovered evidence, but additional facts to prove the same issue is newly discovered evidence, for which a new trial will be granted.

It follows, therefore, that this case is not " directly within *Steinback* agt. *Col. Ins. Co.*, (2 *Caines*, 129.") The facts are totally different.

It follows also that *Seeley* agt. *Chittenden* (4 *How. P. R.*, 265,) is now and always has been the law, and has not been disregarded " a hundred times or more," nor ever until the special term decision in this case, and from which this appeal is brought.

Rosekrans, Justice. The defendants in their third answer set up an agreement between defendants and the plaintiff that the plaintiff should not charge the defendants with the costs of an appeal to the general term, but only with plaintiff's traveling fees, in case the defendants failed to succeed on that appeal. Upon the trial they testified to such an agreement, stating when and where it was made, and who was present when it was made.

The plaintiff testified that no such agreement was made in regard to that appeal; that there was an agreement in relation to a subsequent appeal from the decision of the general term to the court of appeals, and that this last agreement was the only one made. The referee found in accordance with the defendants' testimony, and the plaintiff now moves for a new trial, on the ground that he has discovered evidence that he was not present at the time when and place where the defendants testify the agreement they set up was made; and, also, evidence that at the time the

agreement. was made in regard to the second appeal to which plaintiff testified, there was an agreement made in substance like that proved by the plaintiff.

This evidence applies to the fact principally controverted on the former trial, and within the cases must be regarded as cumulative. (10 *Wend.*, 285, 293–4.)

The. rule is well established that a new trial will not be granted to enable a party to introduce such evidence.

The order of special term should be affired with $10 costs.

MOTION for review at *general term, held at Caldwell, Warren county, July,* 1862.

*Mr. Adams, the appellant,* now moves that the decision and order of affirmance, in the appeal in this cause, be vacated, and for a re-argument and review of the appeal upon the grounds :

1st. That the decision and order of affirmance, as the same appears from the opinion of the court, per Mr. Justice . ROSEKRANS was made under a misapprehension or mistake of the facts of the case.

2d. That the same was made under a misapprehension or mistake of the law of the case.

3d. That, even if the facts assumed and stated in the opinion of the court be correctly stated, the authority (10 *Wend. R.,* 285, *et. seq.,*) cited in the opinion to support the decision, is an authority against the decision and ·is in favor of the appeal.

4th. The decision is against the law of the land.

The appellant insisted that the court, as it appears from the opinion of Mr. Justice ROSEKRANS, has fallen into a very palpable error in its decision, and, if such be the case, it is unquestionably the duty of the court, as an act of justice to the parties, as well as from a commendable respect for the law of the land, to retrace its steps and correct the errors it has committed.

Mr. Adams stated the leading features of the case, and then read the opinion of Mr. Justice ROSEKRANS at length.

*Roselcrans*, J.—When I wrote that opinion, sir, I knew just what I was writing about. I was under no misapprehension about the facts or the law, and the decision is correct within all the decisions.

*Adams.*—I will show that the opinion is unfounded in its statement of facts, and will prove by the very authority cited in the opinion to uphold it, that the decision is entirely erroneous.

*Potter*, J.—You should appeal from our decision; it would be opening a very wide door to allow parties to come in here and ask us to review all the errors we commit in our decisions.

*Adams.*—It would indeed be opening a very wide door, but so long as no appeal has been taken the court has jurisdiction over its own orders, decrees and judgments, and it is clearly the duty of this court to correct its errors, numerous as they may be.

*Roselcrans*, J.—You should appeal from our decision if it is erroneous.

*Adams.*—No appeal has been taken, and the case is still pending in this court, and I claim that the error should be corrected by those who made it.

*Roselcrans*, J.—Can't you appeal?

*Adams.*—That is too profound a question for me to answer at present.

*Bockes*, J.—It is a grave question whether an appeal will lie from such an order; my impression is that the order is not appealable, and I think this motion should be heard, otherwise we may do great injustice.

Mr. Adams then proceeded with his argument.

1st. The court very improperly assumed that the plaintiff testified that " there was an agreement in relation to a subsequent appeal from the decision of the general term to

the court of appeals, and that this last agreement was the only one made."

There is no such thing in the case, but it distinctly appears that at the time of the contemplated appeal to the court of appeals, (fourteen months after the time of the alleged agreement) when P. G. B. declined to go further, the plaintiff proposed that if they would go to the court of appeals the plaintiff would charge them nothing but disbursements if he did not succeed; and that was the only conversation in reference to an agreement, &c. But the plaintiff did not state or pretend that the proposal was accepted or acted upon by the defendants, and the defendant, J. G. B., did not pretend that he recognized the same as an agreement; and the defendant, P. G. Bush, distinctly repudiated the proposal, and even denied plaintiff's saying one word to him about the court of appeals, and the case shows that no appeal was brought and no services or disbursements were rendered therein.

2d. The opinion assumes that the motion was *inter alia*, to prove " that at the time the alleged agreement was made in regard to the second appeal, to which plaintiff testified (as the opinion states) there was an agreement made in substance like that proved by the plaintiff."

There are three errors in this paragraph of the opinion.

1st. No such agreement was made in regard to the second appeal, nor anything like it.

2d. Plaintiff did not testify there was such an agreement, nor anything like it.

3d. The object of the motion was not to introduce evidence (as the court has assumed) "that at the time, &c., (or any other time) there was an agreement made in substance like that proved (as the opinion states) by the plaintiff."

No such facts appear in the case.

3d. The opinion assumes " this evidence (as stated in the opinion) applies to the fact principally controverted on the former trial, and within the cases must be regarded as cumulative." (10 *Wend. R.*, 285, 293–4.)

[*Rosekrans, J.*—Just call that cu-mu-la-tive, and then we will understand what you are talking about.

*Adams.*—Cu-mu-la-tive? Very well, if that will facilitate the understanding of your honor as to the merits of the question, I will adopt the suggestion.]

This paragraph of the opinion is not in any wise sustained by the facts in the case.

1st. The defendants testified to the alleged agreement, and insisted it was made before the appeal to the general term in April, 1859, and stated time, place, circumstances and conversations. This was to disprove and avoid several hundred dollars worth of services and disbursements.

2d. The plaintiff testified to a proposal made June, 1860, fourteen months after the time of the alleged agreement, to appeal to the court of appeals, which proposal was not accepted but was repudiated by the defendants, and no appeal was brought and no services or disbursements rendered therein, and the proposal was not

acted upon. Did that proposal, involving nothing, relate to the agreement set up as the third defence involving several hundred dollars which the defendants sought to avoid by their own false testimony?

The facts need but to be stated to show the utter misapprehension of the justice in his statement of both the facts and the law, and the error of the decision.

*Rosekrans,* J.—I was under no misapprehension, sir, about the case. I understood just what I was writing about when I wrote the opinion.

*Adams, appellant,* then read the evidence from the case, proving that there was no agreement but that a proposal was made as to an appeal to the court of appeals as above stated.

*Rosekrans,* J.—It was that fact to which I alluded in the opinion.

*Adams.*—But you have throughout the opinion assumed that the proposal made by the plaintiff was an *agreement,* and that it related to the agreement testified to by the defendants, made fourteen months before the *proposal.* How can this be sustained? The assumption is groundless.

*Rosekrans,* J.—I will amend the opinion by calling it a *proposal,* instead of an *agreement,* to appeal to the court of appeals.

4th. The substance of the motion stated was shortly this, to prove by newly discovered evidence of the witness Davis,

1st. An *alibi* of the plaintiff on the occasion, testified to by defendant J. G. Bush, when Davis executed the understanding at plaintiff's office, April 23, 1859, for the appeal to the general term, that being the time and place the defendant J. G. Bush pretended the agreement was made.

2d. To prove, inferentially at least, an *alibi* of P. G. Bush on that occasion, if that was the occasion he referred to in his testimony.

3d. By the newly discovered evidence of Huffnail an *alibi* of both defendants on the occasion when Huffnail executed the undertaking, April 22, 1859, if that was the occasion intended by either of defendants when the pretended agreement was made, and it was not pretended by either of them that any agreement was made on any other occasion than the signing the bond for the appeal to the general term.

Not one syllable of evidence was offered by the plaintiff on the trial to prove an *alibi* of either of the parties, and the proposed new evidence of Davis and Huffnail is to

entirely new matter which was in no wise drawn in question on the trial.

5th. Now for the sake of the argument we will assume that the facts are correctly stated in the opinion of the court, so far as they go, then the very authority (10 *Wend.*, 285, *et seq.*,) upon which Mr. Justice ROSEKRANS predicated this opinion overthrows it and proves that the order of the special term should have been reversed.

1st. The definition and illustration given by the court (*p.* 294) to show what is cumulative testimony, overthrows the opinions and decision of the special and general terms in this case.

2d. The comment and conclusion of the court (*pp.* 294, 295,) upon the case of *Steinback* agt. *The Col. Ins. Co.*, (2 *Caines*, 129,) which case was the chief corner stone of the special term decision in this case, proves that that case (2 *Caines*, 129,) in the midst of the multitude of authorities cited in the appellant's points, was of less importance than a mouse in a menagerie.

3d. The views and illustrations of the court (*pp.* 296, 297,) upon the case of *Sargent* agt. *Denniston*, (5 *Cow. R.*, 114, 122,) prove that newly discovered evidence to prove an *alibi* is not cumulative, however numerous may have been the other facts proved or litigated on the trial. Those two cases settled that principle, and are direct and irresistible support to the case of *Seeley* agt. *Chittenden*, (4 *How. P. R.*, 265) which latter case was so directly and energetically repudiated in the special term opinion.

4th. The comments, illustrations and conclusions generally of the court in that case, (10 *Wend. R.*, 285, *et seq.*,) are in perfect harmony with the stream of authorities cited by the appellant in his former points from 3 *Burr*, 1771, down to the 34 *Barb.*, 291, embracing more than twenty decisions, pronounced by the most eminent judicial minds that ever adorned the bench, and prove that the appellant should have had his motion.

It will be seen that the opinion of his honor, Justice ROSEKRANS, was upon an assumption that facts were proved which were not proved; that evidence was given or proposed which was not given or proposed.

It will be seen also that upon the law the opinion is in direct conflict with the stream of judicial authorities plainly and distinctly presented by the appellant, bearing directly upon the question involved, from Lord MANSFIELD (*in* 3 *Burr*, 1771,) down to the eminently just and judicious opinion, per ALLEN, J., in *Platt* agt. *Munroe*, (34 *Barb.*, 291.)

It will also be seen that the opinion of his honor, Justice ROSEKRANS, is directly at war with the very decision (*in* 10

*Wend. R.,* 285, *et. seq.,*) which is cited in that opinion as the authority for this decision.

If the opinion was right, it was casually right, as it was upon an erroneous assumption of facts nowhere appearing in the case, and upon a mistaken view of the authority cited in the opinion to uphold it.

But the appellant insists the opinion is in disregard of the numerous direct and controling authorities cited by the appellant, bearing upon the precise question involved in this case, and upheaves and overthrows the law as it has been defined and applied from the days of Lord MANSFIELD down to the decision per ALLEN, J., (34 *Barb.*, 291,) and, such being the true state of the question, in the language of COMSTOCK, J., (*Tracy* agt. *Talmadge,* 14 *N. Y. R.*, 210,) " it is plainly the duty, as I have no doubt it will be the pleasure of the court, to retrace its steps and correct the errors it may have committed."

The decision should be reviewed and the order should be reversed.

*Roselcrans*, J.—The defendants set up as a defence a special agreement, and on the trial they testified to such an agreement.

The plaintiff testified that he made no such agreement. The referee gave his decision upon the number of witnesses instead of the weight of evidence and the probabilities of the case as he should have done.

The plaintiff has since discovered new evidence to prove that he was not present at the time and place the defendants testified the agreement was made. This evidence is adding to or heaping up upon his evidence, denying that he made any such agreement. It is, therefore, cumulative within all the reported cases, and I do not wish to hear any further argument upon the subject; if my brethren do, they can say so.

*Potter*, J.—I don't wish to hear any further argument upon the subject.

The motion should be denied.

*James*, J.—Further argument will be unnecessary. We investigated the question fully at the last term, and we hold that this evidence is cumulative within all the decisions.

*Adams*, *appellant.*—Within all the decisions? There is not a decision in point in the United States or England to uphold such a decision, or that tends in the slightest degree against the motion for a new trial. Even the case cited in the opinion (10 *Wend. R.,*) is point blank against the decision.

How can you get around the definition and illustration of the term cumulative, as given by SAVAGE, C. J., on page 294 ?

What do you make of the criticism passed by SAVAGE, C. J., ( *pp.* 294–5,) upon your special term authority ? (2 *Caines*, 129.)

That case as an authority here is whittled down to nothing.

How can you avoid the force of the comments and illustrations of SAVAGE, C. J., ( *pp.* 296–7,) upon the case of *Sargent* agt. *Denniston*, (5 *Cow. R.,* 114–22,) proving that this newly discovered evidence to prove an *alibi* is not cumulative evidence ?

How do you get over the stream of authorities I presented to the court in my former points ? Are we to have a decision founded upon the law, or upon mere will ?

I insist there is no case in the United States or England tending in the slightest to support this decision.

The cases in 2 *Caines* and 10 *Wend.* do not support it, and the authorities are universally against it.

*Roselcrans*, J.—We deny the motion, but without costs.

*Potter*, J.—I do not see any reason why he should be exonerated from costs. He should pay costs.

*Roselcrans*, J.—The motion is denied with $10 costs. Order entered accordingly.

BOCKES, J., took no part in the decision.

NOTE.—The following is the pith of the decisions referred to by the appellant:

1st. After a trial and verdict for plaintiff for damages, £161, a motion for a new trial on the affidavit of defendant's attorney, stating that the defendant sailed for a foreign port, &c., and that since the trial and absence of the defendant he (the attorney,) had discovered in a memorandum book of the defendant a receipt. On the special circumstances of the case, and the discovery of very material evidence above stated, the court made the rule absolute for a new trial. (*Broadhead* agt. *Marshall*, 2 *Black.*, 955.)

2d. If credit given to the former witness arose from circumstances which are falsified by affidavit, a new trial may be allowed. The court observed that though it was unusual to grant a new trial on evidence contradicting the testimony on which the verdict had proceeded, discovered subsequent to the trial, yet as the very facts on which those witnesses had founded themselves were falsified by the affidavits produced, they thought it afforded a sufficient ground for a new trial, and accordingly granted a rule *nisi*.

The affidavits could not be contradicted and therefore the court made the rule absolute. (*Lister* agt. *Mundell*, 1 *Bos. and Pull.*, 42; see the note in appellant's first points, of the case of *Fabrilius* agt. *Cock*, 3 *Burr*, 1771, approved in 5 *John. R.*, 250.)

3d. The court has a right to direct a new trial if it sees that justice cannot be done in consequence of the facts not having been fully investigated at the trial. (*Barstow* agt. *Reynolds*, 37 *Eng. L. and Eq. R.*, 468.)

4th. The newly discovered evidence must be material and of a decisive character, and such as to induce belief that injustice has been done. (*Mechanics' Fire Ins. Co.* agt. *Nichols*, 1 *Harr.*, 410.)

5th. A new trial will be granted when material evidence of a distinct species from any that was given at the former trial is newly discovered. (*Watts* agt. *Howard*, 7 *Met.*, 478.)

6th. Although the newly discovered evidence is intimately connected with some parts of the testimony at the trial, yet, if it be specifically distinct, and bear upon the issue, a new trial will be granted. (*Vardeman* agt. *Byrne*, 7 *How.* (*Miss.*,) 365.)

7th. The court will not refuse to grant a new trial on the ground of newly discovered evidence for the reason that such evidence is cumulative merely, if it is sufficient to render clear that which was before a doubtful case. (*Barker* agt. *French*, 18 *Vt.*, (3 *Washb.*,) 460.)

8th. Newly discovered evidence, in order to entitle a party to a new trial, should ordinarily be upon some point not raised at the trial so as not to come fairly within the denomination of merely cumulative evidence, or, if so, it must at least be of such a character as *prima facie* to raise a strong probability that it will be decisive of the case. (*Burr* agt. *Palmer*, 23 *Vt.*, (8 *Washb.*,) 244.)

9th. Where a new trial was sought, on the ground of newly discovered evidence, though the witness lived near the party seeking the new trial, but he did not know their testimony, and this evidence was to new points, a new trial was granted. (*Aiken* agt. *Bemis*, 3 *Woodb. and M.*, 348.)

10th. By cumulative evidence is meant additional evidence of the same general character to the same fact or point which was the subject of proof before, but evidence of distinct and independent facts, of a different character, though it may tend to establish the same ground of claim or defence, or relate to the same issue, is not cumulative within the rule. (*Waller* agt. *Graves*, 20 *Conn.*, 305.)

It was also held in that case, in effect, that a new trial would be granted even though the new evidence was cumulative if the effect of it would be to render clear and positive that which was before equivocal and uncertain. Illustration:

"The ground of defence to an action for a libel, brought by A against B, was, that the libelous writing, after it was signed by B, and before publication, was altered by the insertion therein of material words, without the knowledge or approbation of B; and on the trial, C, who drew up the writing, testified that the writing, as published, was not like the paper written by him and signed by B, in that it did not contain the words in question; and it was afterwards discovered that D, without the knowledge or consent of either B or C, inserted those words. On a petition for a new trial, brought by B, it was held that the testimony of D, showing this fact was not exceptionable as cumulative evidence."

Adams agt. Bush.

11th. Newly discovered evidence to prove an *alibi* is not cumulative; nor does it come within the objection as tending to impeach the testimony of a witness. It tends to disprove the main fact. (*Sargent* agt. *Denniston*, 5 *Cow. R.*, 108, 122, 123.) That case is commented on and directly approved in 10 *Wend. R.*, (296,) and both are directly in point to support *Seeley* agt. *Chittenden*, (4 *How. P. R.*, 265, 268; *affirmed* 10 *Barb.*, 303.)

12th. In *Chatfield* agt. *Lathrop* (6 *Pick.*, 417, 418,) the court granted a new trial for the purpose of impeaching the principal witness of the defendant. That case is approved in 10 *Wend.*, 297.

13th. In *Guyott* agt. *Butts*, (4 *Wend. R.*, 581, 582, 583,) the line of distinction is clearly drawn, *per* MARCY, J.:

"If the evidence newly discovered, as well as that introduced on the trial, had a direct bearing on the issue, it may be cumulative, but we are not to look at the effect to be produced as furnishing a criterion by which all doubts in relation to this kind of evidence are to be settled; the kind and character make the distinction. It is their resemblance that makes them cumulative. The facts may tend to prove the same proposition and yet be so dissimilar in kind as to afford no pretence for saying they are cumulative."

14th. In an action for fraudulent misrepresentations of the credit of a person to whom the plaintiff was thus induced to loan money, which he lost in consequence, moved for a new trial on the ground of newly discovered evidence explaining and adding to conversations from which the alleged misrepresentations were inferred, or proving other parts of such conversations, and altering their effect. *Held*, that the newly discovered evidence was neither cumulative nor impeaching so as to justify the refusal of a new trial. (*Simmons* agt. *Fay*, 1 *E. D. Smith*, 107.)

15th. In *Platt* agt. *Munroe* (34 *Barb.*, 291,) the rule is stated, "in modern practice they are liberally granted in furtherance of justice."

ALLEN, J., in conclusion, "I am of opinion that the proper development of the truth and the advancement of justice required a new trial," (*p.* 298.)

The principles of those cases have been so clearly defined and so long and uniformly applied that they should be regarded by all pure, unprejudiced and intelligent courts, as settled principles of law for the security of the person, the property, and the rights of all citizens. Are they to be oppressively and imperiously scorned and trampled in the dust?

From the cases mentioned it will be seen that the practice, from the earliest to the latest, (just preceding the decision of this case,) has uniformly been to grant new trials for newly discovered evidence to prove that a demand or defence is "founded on fiction, supported by perjury;" or for the subornation of witnesses; or for an erroneous credit given to former witnesses whose evidence is falsified by affidavits; or to overthrow a case or defence established by, or predicated upon fraud, artifice, or trickery; or to impeach the principal witnesses; or to prove an *alibi* of parties or witnesses, &c., as was distinctly proposed in this case; or to render clear that which was before a doubtful case; or where the facts were not fully investigated to attain the rights of parties; or to explain or add to conversations, or proving other parts of such conversations and altering their effect; and in general for "the proper development of the truth and the advancement of justice" between the parties, in such manner and upon such terms as shall prove that the court is worthy of the name of a court of justice.

Short of this the court lends itself as a mere instrument of oppression and wrong; it judicially sanctifies the perjury and the subornation of witnesses; lends credit to falsified testimony; upholds and judicially ratifies fraud, artifice and trickery; crushes to earth truth and right; and that security of person and property which should be for all citizens alike, is rendered dependent upon the caprice, the favoritism, the sinister purpose, the hatred or the revenge of the judge who controls the decision of the question.

H. C. ADAMS, *Appellant.*