## FELLOWS and others *vs.* EMPEROR and others

Upon a motion for a new trial, on a case settled after the code of 1851 went into effect, in a suit commenced previously, section 459 of that code applies; and if the justice trying the cause grants an order, under § 265, directing the motion to be heard in the first instance at a general term, the motion is properly before the general term under that order; and the court has power to decide the questions of *law*, as well as those of *fact*, presented by the case.

In an action to set aside a deed executed by E. to O. S., in trust for the benefit of M. S. and her children, on the ground that it was fraudulent and void as against the plaintiffs, who were judgment creditors of E., the judge found the following facts: That E. was married to M. S. in 1834, she supposing him to be a single man, and that they cohabited together as man and wife from that time until shortly before the execution of the deed, in August, 1848; when it was discovered that E. had a former wife then living, in Ireland, to whom he was married in 1826; that M. S. then separated from E., and had not since lived with him as his wife, but had lived upon the premises conveyed, with her children; that while she lived with E., from 1834 to 1848, she did all the work of his family, and brought up his children, without any assistance; and that the deed was not executed to hinder, delay or defraud creditors, nor with a view to future illicit intercourse, but with the sole intent to compensate M. S. for services previously rendered to E. It also appeared that the value of the land conveyed did not exceed $800, and that the annual income was less than $100. *Held* that the deed was valid; it having a sufficient moral and legal consideration to support it.

*Held also,* that it was no objection to the deed that the only consideration expressed therein was a money consideration.

*Held further,* that the deed, although in trust for the benefit of M. S. and *her heirs,* was not void for uncertainty. That the whole legal and equitable title passed to M. S. by the 47th section of the title of the revised statutes relative to uses and trusts, and was immediately turned into a legal estate.

Principles by which courts are governed, in deciding motions for a new trial on the ground of newly discovered evidence, and of surprise.

Fellows *v.* Emperor.

This action was brought to set aside a deed executed by the defendant Emperor to the defendant Owen Sheridan, on the 7th of August, 1848. The complaint, which was in the nature of a creditor's bill, averred the recovery of two judgments against the defendant Emperor, one in favor of the plaintiffs for $98,62, damages and costs, on the 21st of July, 1849, and the other in favor of one David Golden, for $65,71, on the 19th July, 1849; both of which were recovered before a justice of the peace in Saratoga county, and transcripts filed in the clerk's office of that county on the 21st July, 1849. That the Golden judgment was duly assigned to the plaintiffs on the 10th of August, 1849; that executions had been issued and returned unsatisfied. That the first of said judgments was obtained upon and for a debt on contract owing by Emperor previous to August, 1848, and the second for a debt on contract previous to August, 1849; and that both remained unpaid. The relief demanded was that the deed to Owen Sheridan in trust for the defendant Margaret Sheridan and her heirs, and which covered certain real estate situate in Ballston, Saratoga county, be set aside as fraudulent and void, and that the real estate covered by it be applied in payment of the plaintiffs' judgment. The deed expressed on its face a consideration of $100.

The defendant Margaret Sheridan in her answer admitted the execution of the deed, which she claimed was executed in trust for her and her six infant children. She alledged that the consideration was for a large sum, to wit, $1600, for her work, labor and services performed for Emperor, and which was due and owing to her at the date of the deed, and that the deed was executed in part payment of the debt; and she claimed that she had since the execution of the deed paid out large sums of money, in the care, education and support of her children, amounting to at least $300 per year, and far beyond the actual value of the property during that time. That the value of the real estate conveyed was not to exceed $800, and the annual value less than $100. The deed was recorded in the clerk's office of Saratoga county on the day of its date. The action was tried at the Saratoga circuit in October, 1850, without a jury. The judgments,

the assignment of the Golden judgment and the issuing and return of the executions, were proved as averred in the complaint. The plaintiffs then introduced a stipulation, signed by the defendants'·attorney, in which it was admitted that the defendants John Emperor and Margaret Sheridan were married in the year 1836, and continued to cohabit together as man and wife from that time until a short time previous to the execution of the deed ; and also that the Golden judgment was founded on a running account for goods sold to Emperor previous to the execution of the deed ; that the plaintiffs sold and delivered to Emperor on credit, between March, 1846, and March, 1848, goods to the amount of $98,14, at which time that balance was struck and carried forward ; that afterwards and previous to April, 1849, the plaintiff sold to Emperor other goods, amounting to $65,93, during which time Emperor paid the plaintiffs $94,65, and the judgment was taken for the balance due them. The plaintiffs then introduced the deed in evidence, and rested. It was proved by the defendant that in the year 1824 Emperor was married to Margaret Fitzgerald, both then living in Ireland ; that they had three children after such marriage, and that said Margaret was still living ; that they lived together about four years, when Emperor suddenly left the country and came to the United States ; that witnesses who lived near them in Ireland and near to the said Margaret up to within a year previous never knew or heard of their divorce. The question as to the relevance and materiality of this testimony was reserved for the consideration of the court under the plaintiffs' objection. Not long after, it was reported to Margaret Sheridan (in 1846) that Emperor had another . wife in Ireland. She went to New-York to see her brother about it ; and after she returned she and Emperor lived together till the next season, (1847,) but whether as man and wife the witness could not tell. Since the execution of the deed she had lived with her children, upon the premises conveyed by Emperor, in trust for her and her heirs. It was proved that Margaret Sheridan, while she lived with Emperor from 1836 to 1848, did all the work of his family, and brought up his children, without any assistance except a little, occasionally, when she was ill. A

part of the debt for which the judgments against Emperor were recovered, was contracted while he and Margaret Sheridan lived together as man and wife, a portion before and a portion after the execution of the deed. It.did not appear that Emperor had any other property than that which was covered by the deed.

*E. F. Bullard,* for the plaintiffs.

*J. Lawrence,* for the defendants.

*By the Court,* C. L. ALLEN, J. It is objected on the part of the defendants, that this action having been commenced previous to the code of 1851, must be governed by the provisions of the code of 1849, and that this being a motion for a new trial on a case, the court will only inquire whether errors of fact have been committed. That the code of 1849 provides only in direct terms for a review by an appeal *after* the judgment is perfected, and that it would be unjust to the defendants to allow the plaintiffs on this motion to review the questions of law, inasmuch as a remedy is provided by appeal. That on such appeal the defendant is entitled to security; and to allow a review, on motion, of the *law*, would be a palpable evasion of this provision. This was held to be the true construction of the section under the code of 1849, in *Lusk* v. *Smith*, (8 *Barb.* 570.) That decision was pronounced in 1850, and would seem to control this case, were it not for the code of 1851, which extends its provisions to suits existing at the time of its passage. Section 459 of that code, subd. 2 and 3, declare that "the provisions of this act apply to future proceedings, in actions or suits heretofore commenced, and now pending, as follows: Sub. 2. When there is an issue of law or of fact, or any other question of fact to be tried, to the trial and *all subsequent proceedings*. Sub. 3. After a judgment or order, to the proceedings to enforce, vacate, modify or reverse it, including the costs of an appeal." Section 265 of the same code enacts, that "motions for a new trial on a case, or bill of exceptions, motions for judgment on a special verdict or case reserved subject to the opinion of the court, shall in the first instance be

heard and decided at a special term, unless the justice trying the cause *shall direct it to be heard in the first instance at a general term.* Such motion may then be noticed and brought on to argument by either party at a general term of such court, and the court shall hear and decide the same."

The case in this cause was not settled until about the 12th of August, 1851, after the code of that year went into effect; although the order or stipulation to stay the entry of judgment and for time to make the case was obtained before that time. The provisions therefore of § 459 apply to it. Mr. Justice Paige, who tried the cause, seems to have so determined, as he granted an order under § 265, the day the case was settled, ordering it in the first instance to be heard at the general term. I think the cause is properly here under that order, and that a decision on the questions of law presented by the case will be conclusive, so far as this court is concerned.

The principal question arising in this case, is whether the deed of trust in favor of Margaret Sheridan, is fraudulent as against the creditors of John Emperor. The facts, as found by the learned judge who tried the cause, negative that idea; and so far as they are conclusive upon the question of fraudulent intent, they must control the decision of the court here. The judge came to the conclusion, from the evidence, as matters of fact, that Emperor was married to Margaret Sheridan in 1834, and that they cohabited from that time as man and wife, until a short time previous to the execution of the deed, when it was discovered that Emperor had a former wife then living in Ireland, to whom he was married in 1826; that not long after Margaret Sheridan was informed that Emperor had a former wife in Ireland, she separated from him, and had not from that time lived with him as his wife. Since her separation, she had lived with her children upon the premises conveyed by Emperor's deed. The judge further found, that Margaret Sheridan, while she lived with Emperor, from 1834 to 1848, did all the work of her family, and brought up her children without any assistance. He further found that Margaret Sheridan did not know, either at the time of her marriage with Emperor, or afterwards during

the time they cohabited as man and wife, that Emperor had another wife in Ireland, until informed of it a short time before the execution of the deed, when she went to consult her brother about the steps proper for her to take under the circumstances in which she was placed. He further found that the deed was not executed to hinder, delay or defraud creditors, nor with a view to future illicit intercourse, but with the sole intent to compensate Margaret Sheridan for services previously rendered for Emperor. It appears to me that the finding of these facts dispose of the whole case in favor of the defendants. Emperor was under the strongest moral obligation, at least, if not legal, to compensate Margaret for her services, and to indemnify her as far as he could, in a pecuniary point of view, against the consequences of his own fraudulent and illegal acts. He had deceived her into a marriage which he knew was void: he had permitted her to continue thus to be deceived, innocently believing that she was his lawful wife, for a period of about fourteen years, during which time he availed himself of the benefit of her labor in his family, and in bringing up his six infant children, without any but a very trifling assistance. An action at law could undoubtedly have been sustained by her, for the deceit thus practiced upon her. And the compensation rendered to her by the conveyance in question was, to say the least, not more than adequate. The damages for the injury inflicted upon her by Emperor, formed an additional legal, as well as moral consideration for the deed. The case of *Wait* v. *Day,* (4 *Denio,* 439,) it is believed goes very far to support the deed in question. It is there held that the father of an illegitimate child may pay for land purchased for the mother, and have it conveyed to her without exposing it to the claim of his creditors; provided it appears to have been done to reimburse her for expenditures in the support and education of such child. That case goes on to say that where the payment is by way of gift to the grantee, or to furnish facilities for future illicit intercourse between the parties, or upon any trust for the benefit of the party paying, the payment is a fraud upon creditors. Chief Justice Bronson remarks in that case, " Although he (Barker,) may have been

under no legal liability to the defendant, yet if he paid the money in discharge of what he deemed a moral obligation, to indemnify the defendant against the consequences which had already resulted from their illicit intercourse, the case would not be within the statute. He had made her the mother of two illegitimate children, and was at liberty to refund the money which she had already expended for the necessary support and education of these children. Where there is an existing obligation, either legal or moral, to pay so much money, and the payment is not made with any reference to the future, nor by way of a mere gratuity, the case is not within the mischief, against which the legislature intended to provide." That these were questions of fact for the jury, and a new trial was granted in that case, for the reason that the facts should have been submitted to the jury. In this case the facts are much stronger, in many of their features, than in *Wait* v. *Day*. In that case, there never was any marriage consummated between the parties, but the illicit intercourse originated and continued, by the consent of both. In the case under consideration, the defendant, Margaret, entered into the contract of marriage with Emperor, innocently, having been beguiled by him into the belief that he was a single man at the time. He fraudulently concealed from her the fact of his having another wife living, for a period of 12 or 14 years, during all which time he received the benefit of her labor and services in the support of his family, and bringing up of his children. The judge has found all the material facts in her favor, and I think his finding is conclusive.

It is said that Margaret Sheridan is estopped from setting up her deed, as against the creditors of Emperor, from the fact of her living with him after she was informed of his marriage in Ireland; and that the plaintiffs trusted Emperor in good faith, believing that Margaret Sheridan was his wife. In the first place, the objection is not wholly true in point of fact. A portion of the goods were sold after the execution of the deed, which was recorded in the clerk's office of Saratoga county, on the day of its date, and which was notice to the plaintiffs of its existence. Again; as to the residue, the plaintiffs had the same

means of information as Margaret Sheridan, of the former marriage, and the same report which was first communicated to her, may have reached their ears. She might innocently have waited, and probably did, for more certain information of a fact which she would naturally be slow to believe, and very properly concluded to remain under the same roof with him, and avoid as long as possible, the disgrace which would inevitably light upon herself and children, by giving too rapid a confirmation to a rumor, which might prove to be unfounded. There is no positive evidence that she knew that Emperor had another wife living, at the time the debts in question were contracted; and the judge would seem to have found the fact of her entire innocence and propriety of conduct in this matter, and to have governed his decision accordingly; for he well remarks that "if Margaret Sheridan did cohabit with Emperor a short time after she heard he had a former wife, that circumstance is not presumptive evidence that her previous cohabitation with him was dishonest on her part. It is true that it appears that Emperor had no other property than that conveyed in trust for Margaret Sheridan. But if the deed was executed upon the consideration, and under the circumstances, which the court have found, then it is valid, as before shown.

It is further argued that the fact of the cohabiting of Margaret Sheridan with Emperor, after the deed was given, furnishes strong presumptive evidence that her former cohabitation with him was not honest on her part. This the judge has negatived as a question of fact, and I think very properly. If the services of Margaret Sheridan, as proved, were not such as to raise an implied assumpsit in her favor, yet the strong moral and legal obligation before mentioned, existed on his part, and rendered the transaction valid.

It is contended that the deed is void for uncertainty, because the grantees are not named. The whole legal and equitable title passed to Margaret Sheridan by the 47th section of the title of the revised statutes relative to uses and trusts. It was immediately turned into a legal estate. (1 *R. S.* 728. 4 *Denio,* 442. 6 *Barb.* 487.)

Neither is it any objection that a money consideration of $100 is alone expressed in the deed. Since the case of *McCrea* v. *Purmort*, (16 *Wend.* 460,) it has been held that the consideration clause in a deed is not conclusive, but is open to explanation. And see *Frink* v. *Greene*, (5 *Barb.* 455.) On the whole, I am of opinion, that the motion for a new trial, or reversal of the judgment of the special term, should be denied, and the judgment be affirmed.

The plaintiffs have connected with the case an application for a new trial, on the ground of newly discovered evidence, and of surprise. The principles by which the court is to be governed in deciding a motion upon this ground, are as I understand them, well settled. 1st. The testimony must have been discovered since the former trial. 2d. It must appear that the new testimony could not have been obtained with reasonable diligence on the former trial. 3d. It must be material to the issue. 4th. It must go to the merits of the case; and 5th. It must not be *cumulative*. (*The People* v. *Superior Court of New-York*, 10 *Wend.* 285 *to* 292.) Now what do the plaintiff's affidavits disclose? Mr. Benjamin J. Severance deposed that he has been acquainted with Emperor for nearly eight years last past; that during that time he has lived with a woman by the name of Margaret, who is known as his wife, and by whom he has had seven children; that the said Margaret is well known to the deponent; that she has no other husband, known to him, and has lived with no other man, to his knowledge, except Emperor during all the time he has known them; that early in the fall of 1850, or about that time, the said Margaret gave birth to a child. That during that fall Emperor often, and as he thinks always, spent his nights at home, with the said Margaret and her children, and also his Sundays, at the house occupied by them in the town of Ballston, within one mile of the place where he (Emperor) worked; and that since that time they have lived together as man and wife. Another witness, Mr. Fuller, deposed that he has known Emperor and Margaret for the last three years; that they have lived together as man and wife for the last two or three years; that Emperor was off at work for a time, but

Fellows v. Emperor.

generally came home Saturday nights, and remained over Sunday with his family; that for the last seven or eight months they have lived together regularly, the said Emperor working near home ; that the youngest child of Margaret is about one year old ; and that she does not pretend to have any other man living with her, or any other father for her child, to the deponent's knowledge. The next affidavit is that of Mr. Fellows and Mr. Fairbanks, the plaintiffs in the action ; each of them state that at the time of the trial he was not aware of any witness or testimony by which the facts set forth in the affidavit of Severance and Fuller could be proved. That they reside at Mechanicsville, about twelve miles from where Emperor and Margaret reside and have resided for the last two or three years. Mr. Fuller further states, that he left the management of the case mainly to Mr. Bullard his attorney. *That he was informed that Emperor worked for James Ashman* about the time of the trial. They further state that they had not been personally acquainted with the family of Emperor, for the past two or three years, and did not know how they lived since they quit trading with them at their store in Mechanicsville, which was before the action was commenced. The next affidavit is that of Mr. Bullard, the plaintiffs' attorney and counsel. He swears that he was authorized and requested by the plaintiffs to examine the facts and prepare the cause for trial. That Emperor and his wife reside at Ballston about twenty miles from his residence, and twelve miles from that of the plaintiffs. That before the trial he inquired of several persons at Ballston, who informed him that Emperor lived with John Ashman and did not live with his wife, and that from all the information he then obtained, he supposed that Emperor and Margaret had not lived together as man and wife since the execution of the deed in August, 1848 ; but found it difficult to obtain definite evidence on that subject. That he expected to call Richard Cross as a witness on the part of the plaintiffs, but at the trial before he was called, he was informed either by Cross or some other person, that Emperor was not then living with Margaret, and had not lived with her since the deed ; and when the trial commenced

he verily believed that such was the fact, but that shortly after the trial he discovered that he had been misled on that subject, and ascertained to his satisfaction that Emperor and Margaret had lived together as man and wife since the execution of the deed. These are substantially the facts disclosed in the affidavits of the plaintiffs. It appears further by an affidavit read in opposition, by the defendants' counsel, that Margaret Sheridan, from the time of the commencement of the action to the time of the trial, resided where she now does on the premises in question, about half a mile from the court house where the trial was had; that the plaintiffs' counsel, on the trial, called Emperor as a witness, and stated to the court that he had been subpœnaed on their behalf.

I. Is the evidence offered material to sustain the plaintiffs' case, or any issue presented by it? The complaint alledges, that Emperor intending to hinder, delay and defraud his creditors particularly the plaintiffs, and intending to make a trust for the benefit of himself and his children, and one Margaret Sheridan, and thus keep his property from the payment of his debts, conveyed the premises in question to the said Owen Sheridan in trust for Margaret and her children; that no pecuniary consideration was paid, though one of $100 was expressed in the deed, and that said Margaret is the reputed wife of Emperor, and that he felt bound to support her as such, which was one reason for making the deed. There is no allegation that the deed was executed with a view to future illicit intercourse between the parties. Margaret Sherdan denies in her answer all knowledge that Emperor felt bound to support her as his wife, and that such feeling entered into the consideration of the deed, but avers the consideration to be as before stated. She admits that she has been the reputed wife of Emperor, but avers that she separated from him in the month of June, 1848, since which time such reputation had ceased. She denies that she has lived with him as his wife for a long time past, and in substance denies cohabitation with him as such. The plaintiffs in their reply do not deny, but admit, this allegation, and say that they were married several years ago and lived together several

years as man and wife, and that it is *wholly immaterial* in this action, whether she has ceased to live with Emperor, or ceased to be his wife by reputation. It is difficult to perceive that the testimony offered could be material on another trial, under the issues presented by the pleadings. The only point of view in which the evidence could be deemed material would be to show that the deed was executed for the purpose of facilitating the future illicit intercourse between Emperor and Margaret. But this fact is not alledged or pretended in the complaint, and if it were, the answer avers that Margaret had not lived with him for a long time past as his wife, which substantially denies that the deed was executed for the purpose just stated. This is admitted by the reply, which claims that the fact is entirely immaterial. The evidence offered would therefore go to contradict this very admission, which could not be permitted. Where a party in pleading has alleged a fact which is not denied by his adversary, such fact must be taken as true and cannot be contradicted in that suit. (*Thomas* v. *Austin,* 4 *Barb.* 265.) It is apparent from the pleadings, that this fact was not considered material, and was not relied on, when they were framed. The action seems to have been brought to set aside the deed, on the ground that it was executed with intent to hinder and delay and defraud the creditors of Emperor, and was therefore void, under 2 R. S. 197. This is the ground alledged in the complaint, and no other intent is averred. The question then must be, was the deed executed for a valuable consideration existing at the time? If it was, and the court as before remarked have so found, then no subsequent act of Margaret Sheridan, except her own deed or a decree against her, could divest her of her title. Future cohabitation with Emperor would not create a forfeiture, any more than cohabitation with any other man, unless it entered into the consideration of the deed, which, as before shown, cannot be litigated here.

II. But if the testimony would be material, I am of opinion it would be cumulative, and therefore the motion should be denied upon that ground. The fact seems to have been presented on the trial, and to have been passed upon by the judge; for he

remarked that the deed "*was not given to furnish facilities for future illicit intercourse.*" There was some proof that Margaret and Emperor had lived together as man and wife, after she was informed of his former marriage in Ireland, and before the execution of the deed. It was testified by one witness that about three years before the trial, the *rumor* came out that Emperor had another wife living when his brother Christopher came over, and that Margaret and Emperor lived together as man and wife about a year and a half after that. There was evidence therefore upon this very point, passed upon by the court, and he found the fact against the plaintiffs. The testimony offered seems clearly to be *cumulative*, and that is a fatal objection to the application. (*Fleming* v. *Hollenback*, 7 *Barb.* 371. 10 *Wend.* 292. 15 *John.* 210.)

III. But suppose I am incorrect in both the above conclusions. The next question that arises is, do the defendants show reasonable diligence, to procure the proposed testimony, on the trial? For if they do not, it is well settled a new trial cannot be granted. (18 *John.* 489. 10 *Wend.* 292.) On this question I think there cannot be a reasonable doubt. The defendant Margaret Sheridan resided within half a mile of the court house where the action was tried. She had resided there with her children from the time of its commencement. It is not to be doubted for a single moment, but that if Emperor had continued to live with her as his wife during all that time, and she had given birth to a child of which he was the father, in the fall of 1850, the facts could have been shown by abundance of testimony. The affidavits do not indeed show any great desire or attempt to procure such testimony on the trial. No inquiry was made of Mr. Ashman, for whom Emperor worked during a portion of the time, where he was in the habit of spending his nights, or where he made it his home; nor does it appear that any inquiries were made in the neighborhood of the premises until after the trial. Mr. Bullard does indeed swear that he inquired of several persons, at Ballston, who informed him that Emperor lived at Ashman's and did not live with his wife; but it does not appear that these persons resided near the premises,

Fellows v. Emperor.

or knew any thing about the facts ; nor is it probable they did, for on making inquiries in the right quarter after the trial, he obtained the information of which the plaintiffs should have possessed themselves before, if it was deemed material.  Emperor himself, who was subpœnaed by the plaintiffs, and who could have testified to that fact, though called by them, was not examined. If the plaintiffs knew—and they were bound to know, if they intended to present it as a distinct point upon the trial—of the materiality and importance of this evidence, they were required to use all reasonable diligence in obtaining it, by resorting to the place or places where it could most probably have been obtained.   Nor is it any ground of excuse to say, they were misled and surprised upon the trial, when the testimony they sought was within their reach, and might have been procured.  A party is chargeable with laches who, previous to the trial, knew that the witness, whose testimony he seeks to introduce as newly discovered, must probably from his situation &c. at the time of the transaction, be conversant with the facts in relation to it. (10 *Wend.* 285.)   Here the witness Fuller swears that he derived his knowledge from the fact of his residing near the premises—the very person among others on whom they should have called before the trial.   It appears to me, if a new trial should be allowed, under such circumstances, it would enable parties very easily to open a cause and to prepare testimony for a second trial, when they had seen the strength of their adversary's case, and the weakness of their own.   It is not believed the present is a case for extending or relaxing a rule long since established and settled.   In every view of this case, I cannot but conclude, that justice has been done the parties, and the motion must be denied, and the judgment of the circuit court affirmed, with costs.

WARREN GENERAL TERM, May 3, 1852. *Willard, Hand, Cady* and *C. L. Allen,* Justices.]