JOHN NININGER, Respondent, *vs.* J. JAY KNOX *et als.*, Appellants.

APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

The Plaintiff employed an agent to take a note to the bank of Defendants for collection. *Held*, that it was competent for him to show what instructions he gave his agent at the time, to show the special agency; and that the proof being admissible for this purpose, and the Court having admitted it upon this ground, it was not error for which a new trial can be granted, that the counsel for the Plaintiff claimed, *arguendo*, that it was admissible upon a different ground.

If the Defendants feared prejudice from this cause, they should have requested the Court to charge the jury that they could only consider the evidence for the purpose for which it was properly admissible.

A question which called only for the opinion of a witness as to his solvency at a certain time, was properly excluded by the Court.

The fact of the insolvency of a person may be proved by general reputation. It falls within the class of exceptions to the rule excluding hearsay evidence.

Where the jury agreed upon their verdict. sealed the same and separated, and upon coming into Court the following morning stated to the Court that they had agreed, but had made a mistake in their figuring, *Held*, that the Court committed no error in directing them to retire and reconsider their verdict.

A new trial will not be granted on the ground of newly discovered evidence, where the applicant does not show that he has used all due diligence to procure the testimony before the trial, nor where the evidence is merely cumulative. The rule in regard to cumulative evidence is not changed, from the fact that in this State parties themselves may be witnesses.

## Points and Authorities for Appellants.

I.—The learned Court below erred in admitting the evidence of J. A. W. Jones and John Nininger, as to the conversation or instructions of the Plaintiff in relation to the evidence of the endorser of the note in question, the same being wholly immaterial and incompetent.

II.—The learned Court erred in not ruling the said testimony out, as incompetent for the purposes for which the Plaintiff offered it, or claimed it to be admissible, to-wit, as part of the transaction and corroborative evidence, (exception by Defendant), folio 66, the same not being pertinent to any issues in the case, being *res interalos acta*, hearsay and generally incompetent. 1 *Greenl. on Ev.*, sec. 171, *p.* 227 ; 1 *Phil. on Ev.*, *p.* 230 ; 2 *Phil. on Ev.*, *Notes* 585; 1 *Starkie on Ev.*, 40,–46, 51; 3 *id.*, 1300 ; 1 *Greenl. on Ev.*, sec. 108, *p.* 136–7 ;

Nininger v. Knox et al.

19 *Conn.*, 250 ; 5 *Barb.*, 154; 15 *id.*, 562; 10 *Cush.*, 256 ; 8 *Mass.*, 164; *Nininger vs. Borup & Oakes, Sup. Court Minn.;* 13 *Md.*, 429; 5 *Md.*, 433 ; 14 *Wend.*, 111; 19 *id.*, 203; 7 *id.*, 363.

III.—The learned Court erred in overruling the following questions put to the witness, S. S. Eaton, on cross examination by the Defendants :

"At the time of the maturity of the note, at any time thereafter and before this suit was brought, had you the means to pay it supposing you had been fixed as an endorser ? "

Because the question related to the question of the solvency of the witness, which he had been called by the Plaintiff to prove.

IV.—The Court erred in overruling the following question put to said Eaton, on cross examination, by Defendants :

" If you had been holden on this endorsement, would you have gone on with this mill ? "

Because the evidence was legitimate upon the question of damages, this mill being the principal property of the witness.

V.—The Court erred in admitting evidence of reputation to prove the insolvency of Joice, the maker of the note. This was hearsay, and not within the exceptions admitting hearsay evidence.

VI.—The Court erred in ordering the jury to reconsider their sealed verdict, after a separation, and without the said sealed verdict being first disclosed. 2 *Gra. & Wat. on New Trials, p.* 550; 8 *Ohio*, 405.

VII.—There was irregularity or misconduct in the jury having separated after agreement, and during separation having agreed to change their verdict before their verdict was announced in Court. *Grabe vs. Ætna Insurance Company,* 6 *Minn., p.* 82

VIII.—The verdict was against evidence, because the only evidence in relation to the insolvency of Joice, the maker of the note, was hearsay, and confined to the years 1858 and 1859, and because the evidence in relation to the means of Eaton, the indorser, did not show solvency,—these issues being on the Plaintiff.

IX.—The newly discovered evidence shown by the affidavits, was sufficient to entitle the Defendants to a new trial. This was the evidence of George L. Seager, who was present and heard the conversation between Jones and Knox. This was not evidence of the same kind as the evidence of Knox, the other witness of Defendants, for Knox was a party; it was not cumulative within the restriction. This evidence was entitled to be weighed with the whole case. 3 *Gra. & Wat. on New Trials*, 1046–7, etc., 1063; 1 *id.*, 466 *to* 469; 1 *Sumner*, 482; 1 *John's Cases*, 402; 4 *Wend.*, 579; 6 *Pick.*, 114, 417; 24 *Pick.*, 246; 3 *Gra. & Wat. on New Trials*, 1104–5; 7 *Dana*, 329.

X.—The admission of the evidence of Nininger and Jones in relation to the conversation between them, objected to by Defendants, if for a different purpose, or not as evidence for the purposes for which the Plaintiff offered it, should have been explained to the jury by the Court, and its effects limited. The omission of the Court so to do prevented a fair trial. 3 *Gra. & Wat. on New Trials, pp.* 773–4–5, etc.; 1 *id.*, 273.

Points and Authorities for Respondent.

I.—If the testimony of Jones and Nininger was competent for any purpose, we may show it here; and it is not material on what ground it was received. A right decision for a wrong reason is never reversed; it is not error. But when testimony is excluded, a party is bound by his offer; not, however, where it is received. 5 *Minn.*, 444; 1 *Hill*, 336.

II.—This evidence was competent for the following reasons:

*a.* The Defendant tendered the issue as to whether the Plaintiff gave the notice of the endorser's residence, and the evidence was within that issue. The objection to the evidence was, then, in effect, an objection to the materiality of one of Defendants' own defences. *See Answer and Reply;* 1 *John.'s Rep.*, 509.

*b.* This Court decided with two reiterations, in the case of *Borup vs. Nininger,* that under the peculiar circumstances,

the Plaintiff was bound to notify the banker of the endorser's residence. The Plaintiff did notify him, and the only way he could show it was, by showing all the facts, viz: that Jones gave the information as his (Plaintiff's) agent, which involved not only proof of the fact of notice by Jones, but also of the authority whereby he gave it, and this required that the conversation should appear in evidence. 5 *Minn.*, 523. Had it been omitted, Defendants would then have said the Plaintiff did not give the notice, and he was also negligent.

*c.* The only way the Plaintiff could show that he left the note with the Defendants, for collection, &c., and the only way by which he could show a relation of contract between himself and the Defendants was, by proving that he employed Jones as his special agent to deliver the note and give the notice, and that in pursuance of such employment and authority, Jones did deliver the note and give the notice.

III.—Defendants' third and fourth points are not well taken. In both cases the Defendant was not cross examining, and was seeking for the conclusion of the witness, upon a state of facts before the jury, though it was not a case for experts. The second was an attempt to introduce a speculative opinion upon what the witness would have done under a contingency which never happened. It was calculated to draw away the minds of the jury from the merits of the cause. 1 *Greenl. on Ev.*, sec. 441; 2 *Stark. R.*, 258.

IV.—The issue on Joice's insolvency was collateral, being only material on the question of damages,—a matter in mitigation of damages,—since the Plaintiff would have a right of action against the Defendant for his negligence, whether he could make the money of Joice or not; he lost one security. Insolvency was a negative fact, and from the form of the issue on the pleadings, Plaintiff had only to make a *prima facie* case. Joice's reputation was proved in the correct way. The evidence received was competent for that purpose, and reputation, certainly, "throws some light on the issue." When one fact usually accompanies another, proof of the other raises a presumption of the former. It would be almost impossible that a man should be reputed "notoriously insol-

vent among his neighbors," unless he was so in fact. Repution is proper evidence of official character, 9 *Wend.*, 17 ; of marriage, 5 *Day*, 290, 293; 12 *Moor*, 500; 4 *Bing. S. C.*, 266; of chastity, of ownership, of market value, &c., and for the same reason. They are facts calculated to impress themselves on the community where they exist, as the character of a bawdy house, &c. The proof was approved and discussed on writ of error, in *Steel vs. Cochran*, 2 *Dev.*, 63; 2 *Cow. & Hill Notes*, *p.* 702.

V.—Defendants' sixth and seventh points must fail, because no prejudice is shown, whereas the contrary appears. All late precedents require such showing. 1 *Hill*, 207.

VI.—The verdict of a jury should not be disturbed unless it is clearly against the evidence. Joice's insolvency and Eaton's solvency were shown *prima facie*,—the jury thought conclusively.

VII.—The affidavits of Knox and Seager are insufficient. 5 *Minn.*, 171; 2 *Denio*, 109; 5 *Wend.*, 114; 10 *id.*, 292; 18 *J. R.*, 489; 7 *Mass.*, 207.

HORN, LUND & GALUSHA, with M. SHERBURNE, Counsel for Appellants.

BRISBIN & WARNER, Counsel for Respondent.

*By the Court*—ATWATER, J.—The cause of action in this case, and the pleadings, are substantially the same as in the case of *Nininger vs. Borup*, 5 *Minn.*, 523, it being a claim for damages arising from the neglect of the Defendants to give notice of protest of a note to the endorser, whereby he was discharged. The Plaintiff, maker of the note, and endorser, are the same as those named in the case above cited, the note being one arising out of the same transaction as there stated, and a reference to that case will render unnecessary any more particular statement of facts in this. There was a verdict for the Plaintiff for the sum of $3,342.37. The Defendants moved for a new trial, which motion was overruled, and from the order entered thereon the Defendants appealed to this Court.

Upon the trial of the cause, the Plaintiff offered in evidence the deposition of one J. A. W. Jones, and the Defendants thereupon objected to the following question or interrogatory put to said witness, and the answer thereto, viz: "When you were employed to do this, (leave the note with Defendants), what were your orders"?

Answer, "I was ordered to take the note to J. Jay Knox & Co.'s bank for collection, and at the same time to state where this endorser lived, as there were two of the same name, one residing at St. Paul, the other in Nininger; that this one lived at Nininger." This evidence was objected to as incompetent, irrelevant and immaterial.

Whereupon the counsel for the Plaintiff insisted, that said testimony was admissible as part of the transaction, and as corroborative of the witness. The Court admitted the testimony, remarking, that to prove special agency, it was frequently necessary and unavoidable to show the special instructions creating and qualifying it.

This evidence was properly admitted upon the ground suggested by the Court upon the trial. The question of whether the Defendants had notice of the residence of the endorser, was directly put in issue by the pleadings. It was necessary for the Plaintiff to show that his agent had done two acts requisite to fix the liability of Defendants, viz: that he had left the note with Defendants, and that he had given Defendants notice of the residence of the endorser. It was also necessary for the Plaintiff to show that he had authorized or directed Jones to do these acts. If Jones, without any request on the part of the Plaintiff, and of his own motion, had left this note with Defendants, and given the notice, it will scarcely be claimed that the Plaintiff would be entitled to recover of Defendants, upon proper objection that the owner of the note had not connected himself with the transaction. The Plaintiff appointed an agent for a special purpose,—can it be doubted but that he should be permitted to show what the purpose was, where it becomes material, and is embraced within the issues raised by the pleadings? The answer admits that the note was left with Defendants, as stated in the complaint, but denies notice of the residence of the endorser.

If the first named fact had been denied, the Plaintiff unquestionably would have been entitled to show that he employed Jones to leave the note with Defendants, for, as above stated, merely showing or proving that Jones had left the note with Defendants, without connecting the Plaintiff with the transaction, would be insufficient. But there would seem no more impropriety in permitting the latter fact to be proved than the former. If the Plaintiff would be permitted to show that he had authorized Jones to take the note to the bank, why should he not be permitted to prove what he had authorized him to do with it there? The proof of each fact would rest upon the same principle, and if denied, would become essential to the Plaintiff, in order to fix the liability of the Defendants.

I think it is true, that the ground upon which the Plaintiff's counsel urged the admission of this evidence, was not tenable. But if the evidence was proper in any aspect of the case, a new trial should not be granted, on account of the admission of such evidence, unless it appear that the Court or jury have taken a wrong view of the object and effect of the testimony, and have been misled by it. In this case it affirmatively appears from the case, that the Court admitted the evidence upon the correct ground. If the Defendants apprehended that the jury were misled, or liable to be misled, by any views or statements of the counsel for Plaintiff as to the ground upon which this evidence should be received, he should have asked the interposition of the Court to prevent the counsel from making improper appeals to the jury, or have asked the Court to instruct the jury that the evidence could only be regarded by them to prove the point for which it was properly admissible. (*St. Martin vs. Desnoyer*, 1 *Minn.*, 156.) Where a party has slept upon his rights at the trial, he should not here be permitted to urge that prejudice to his rights has occurred, from proceedings there had, which might have been obviated by proper objection. In this case, however, it is quite as reasonable to suppose that the jury took a correct view of the purpose of this evidence, as the contrary, in view of the remark made by the Court at the time it was received. But even were it otherwise, I think the Court be-

low was correct in the remark made upon the decision of the motion for a new trial, that " in view of the fact that the Defendants might have placed the matter beyond controversy by a simple request to charge, I do not think that any imaginary or possible presumptions should be invoked to set aside the verdict." And he might with propriety have stated that even probable presumptions should not avail to that end.

The Defendants, on cross examination of S. S. Eaton, (the endorser), put the following question, which was excluded by the Court, upon objection by Plaintiff's counsel, viz: "At the time of the maturity of the note, or at any time thereafter, and before this suit was brought, had you the means to pay it supposing you had been fixed as an endorser?" This question called only for the opinion of the witness—the judgment of his own mind, upon facts which the jury were the proper persons to pass judgment upon. It was for the jury, and not the witness to determine upon his responsibility, after hearing the facts in regard to the amount of his property, of what it consisted, his liabilities, &c. And both for this and other reasons, was the following question put to the same witness, properly excluded, viz: "If you had been holden on this endorsement would you have gone on with this mill?" The question at issue was whether the endorser had the means to pay the note under the facts as they actually existed, and not whether he might or would have had the means under an entirely different state of facts.

The Court admitted the Plaintiff to prove the insolvency of the maker of the note, by witnesses testifying that in the community where he resided he was generally reputed to be insolvent. The Defendants urge that such evidence was incompetent to prove the fact. The Appellant has cited no authorities to establish his view of the law upon this question, and after a somewhat thorough examination of the cases, we have been able to find none directly in point. The question is one which may well admit of some doubt, but upon the whole, I think the case comes within the principle of those cases, in which Courts have admitted a fact to be proved upon reputation. Those facts pertain to evidence of official character, of marriage, of chastity, of ownership, of the character of an

individual, &c.  It has been held, upon an inquiry respecting reputed ownership, that hearsay evidence of the opinion of neighbors is admissable either to prove or disprove the reputed ownership of the bankrupt.  In one case, *Gibbs, C. J.*, observes, "What is reputed ownership?  It is made up of the opinions of a man's neighbors; it is a number of voices concurring upon one or other of two facts." (1 *Phil. on Ev.*, 188, *and* 3, *ib.* 349.) It is difficult to see why evidence of insolvency of the same kind should not be admitted, and especially as the fact to be proved is of a negative character, scarcely admitting of direct and positive proof.  It is observed by Mr. Starkie (*Stark. Law of Ev.* vol. 1, *p.* 28), "that many facts, from their very nature, either absolutely or usually exclude direct evidence to prove them, being such as are in ordinary cases imperceptible by the senses, and therefore incapable of the usual means of proof."  This seems to be as definite a test as any which can be applied to determine whether this species of proof is admissable in any given case, although a wider application has been given to the principle in practice, as authorities may be found where evidence of reputation has been admitted, where the fact was susceptible of direct proof, as in *Dier vs. Fleming*, 4 *Bing.*, *S. C.*, 266, where it was held that reputation is sufficient evidence of marriage, although the parties are still alive, and the party seeks to recover as heir at law.  It would seem that the fact of insolvency, from its nature, must usually exclude direct proof, as no one, save the person himself, could ordinarily safely swear that a man had no property, or insufficient to meet his liabilities, at any given time.  And on the other hand, the fact of insolvency is of such a nature that the opportunities of the public for forming a correct judgment in the matter must be usually as ample as those existing to form a judgment of character, in any other respect; and indeed more so, as the grounds upon which such a reputation would be formed, would exist usually in the dealing of a considerable portion of the community with the individual, and it would be highly improbable that such a reputation should obtain, unless the fact really existed upon which it was based.  In the *State vs. Cochran*, 2 *Dev.*, 63, it was held that common reputation was the best evidence of the state of

a man's property, and although the question there arose collaterally, some of the reasons given for the admission of this species of evidence are not without weight in a case like the present. We think the Court below committed no error in permitting the insolvency of the maker of the note to be proved by this species of evidence.

It appears from the case that the jury retired to consider their verdict on the 8th of May, and remained out until after the adjournment of the Court,—that they came in the next day at the opening of the Court, with a sealed verdict, and announced to the Court that they had agreed, but had made a mistake in the figuring. Whereupon the Court, without opening or examining the sealed verdict, directed the jury to retire again and re-consider their verdict. To this direction Defendants excepted, and now allege the same as ground of error.

We think there was no error in the direction of the Court to the jury, to reconsider their verdict. If there was evidence to show any misconduct of the jurors, or that they had been tampered with during their separation, it would afford strong reason against permitting them to reconsider their verdict, even to correct an error in the figuring. Or, without this, did it appear that the jury wished to reconsider any principle discussed in the case, or any issue tried between the parties, we think the Court would have no right to permit them to reconsider their verdict in the circumstances. But where nothing of this kind appears, we are not aware of any case which holds, that an error in figuring up the amount which the jury have agreed the party was entitled to, discovered after the verdict was sealed up and the jury had separated, may not be corrected, either in open court, or by again sending the jury out. The jury having agreed upon the principle or ground of their verdict, in a matter of damages requiring computation, it may be assumed as the ordinary practice, that one or more of the jurymen figure the amount, to which the others assent. If after separation, the juryman who makes the figuring discovers an error in the same, it would be his duty to make the fact known in some manner, either to his fellows, or the Court, or both, before the verdict was ren-

dered.   And to hold that this mere error of figuring, without anything further, and without showing any prejudice, or anything from which prejudice might be inferred, should vitiate the verdict, would be a grievous hardship upon innocent parties, and would not comport with the ends of justice in the trial of causes by jury.

We do not understand the authorities cited by Appellant (2 *Gra. & Wat. on New Trials*, 550, *Sutliff vs. Gilbert*, 8 *Ohio*, 405,) to support the view which he here urges.   In the case of *Sutliff vs. Gilbert*, the Court remark, that " where the jury have decided the issue between the parties, but have failed to return a complete verdict, as, for instance, where, in an action on a promissory note, they have found for the Plaintiff, the amount of the note with interest, but have not specified in dollars and cents that amount, they may with propriety be returned to their room to make the computation of interest.   The case under consideration is somewhat analagous. The jury found in favor of the Plaintiff, they fixed upon the rule of damages, and that rule was, the amount for which the property in litigation sold, together with the interest from a specified time.   Nothing remained but to compute this interest, and for this purpose the jury might well be sent out. It was not with a view to make any change in their verdict, or to settle any new principle, but to carry out the original finding."   These remarks apply with equal force to the case at bar, which falls within the principle and practice approved in the case above cited.   There are no facts presented by the case, connected with this point, which would justify this Court in granting a new trial upon this ground.

It is further urged by Appellant that the verdict is against evidence, in that the evidence in relation to the insolvency of the maker of the note, was hearsay, and confined to the years 1858-9.   And because the evidence in relation to the means of Eaton, the indorser, did not show solvency.   In regard to the first point, it is sufficient to observe, that the evidence being admissible, (as above considered) by which insolvency was shown, the proof made out a *prima facie* case, at least, and the burden was thrown upon the Defendants of showing that the maker was solvent.   In regard to the second point,

there was considerable evidence introduced, touching the sol-
vency of the indorser, and it was properly a matter for the
jury to determine, and this Court cannot interfere with their
finding without disregarding well settled principles of law.
And even were this Court the proper judges of the fact, upon
the evidence stated in the case, we see no reason to suppose
that the jury have erred in their finding.

One of the grounds upon which a new trial is asked in this
case is that of newly discovered evidence. The Defendants
introduced, on the motion for a new trial, the affidavit of one
Seager, a resident of McLeod county, which stated in sub-
stance, that the deponent was present at the banking house
of Defendants, on the 5th of August, 1858, about noon, for the
purpose of depositing a sum of money,—that while standing
at the counter, arranging the money, some persons, to depo-
nent unknown, came in, one of whom came to the counter;
that this person handed John Jay Knox a paper, saying to
said Knox, at the same time, "Will you send it up to Saint
Anthony?" Said Knox took the paper, glanced at the face,
then turned it over, saying these words, "S. S. Eaton, eh?"
and then to this person, "Will it be paid?" This was spoken
in a tone indicating that it was rather doubtful. Said Knox
continued by saying he "would do what he could," or "would
see what he could do." I knew S. S. Eaton of Saint Paul,
but did not know that there was another person of the same
name; I received the impression that this was the S. S. Eaton
mentioned in the conversation. I do not think there was any
reference to Nininger, or to any person living in that place."

It is to be remarked, in regard to this evidence, that if the
strict rules of diligence required to be observed by a party
who asks a new trial on this ground, be applied to this case,
the motion was properly denied, on the ground that the De-
fendants had not shown such diligence. The issue of notice
of the residence of the indorser was distinctly made in the
pleadings, and one of the most important, if not *the* main
issue on the trial, as the Defendants must have known,
both from the nature of the case, and from the fact that ano-
ther trial had been previously had in the same Court, in which
the same question was litigated on a note arising out of the

same transaction, and of which Defendants must have been aware. R. F. Fiske was a witness on the part of the Defendants, to prove that Jones, when he left the note, gave no notice of the residence of the indorser. Now, the Defendant, Knox, in his affidavit, states that his attention was first called to the fact that another person was at the counter, by the evidence of R. F. Fiske, on said trial, who stated in substance, that there was another person at the counter of the banking-house at the time, who made way for Jones, but that he did not know said person, &c. These facts, or this fact, must of course have been known to Fiske before the trial, and the inquiry at once suggests itself to every mind, why had not the Defendants inquired of Fiske as to the presence of other parties? Had this very obvious course been pursued, the Defendants had precisely the same means before trial as after, for ascertaining who this person was, to wit, reference to their books. And, indeed, without such inquiry, it would seem that the Defendants must have been put upon track of this evidence by reference to their books alone, as Fiske states that he drew a check upon that day, which must have shown by an entry in their books the day upon which the transaction took place. We think these facts do not show that degree of diligence which the law requires in applications of this kind. The party applying, on the ground of newly discovered evidence, must make his vigilance apparent,—for if it be left even doubtful that he knew of the evidence, *or that he might, but for negligence,* have known and produced it, he will not succeed in his application. This is a well settled and comprehensive rule, running through all the cases on applications of this kind, and entering essentially into the practice of all Courts proceeding on the principles of the common law. (*Gra. & Wat. on New Trials, vol.* 1, *p.* 473; 13 *Barb.,* 104; 18 *Johns.,* 489; 10 *Wen.,* 292; 7 *Mass.,* 205; 1 *Term Rep.,* 717; 1 *Bay.,* 263, 491; 3 *Miller, Louis. Rep.,* 382.)

But there is another objection equally fatal to the application for a new trial, on the ground of newly discovered evidence. The evidence proposed to be offered is merely cumulative. One of the Defendants, and one R. F. Fiske, were examined on the trial with reference to the question of notice

of the indorser's residence.    We do not think the position of counsel for Appellants, to wit, that this was not evidence of the same kind as the evidence of Knox, the other witness of Defendant, because he was a party, is well taken.    Cumulative evidence has been defined as additional evidence to support the same point, and which is of the same character.    (10 *Wen.*, 285; 1 *Sand.*, 198.)    The evidence was of the same kind, being parol testimony as to what occurred between Jones, (the person who left the note) and one of the Defendants.    The fact that the statute allows a party to be a witness, does not change the character of his evidence.    As a matter of law it cannot be said that the evidence of a party upon any point is of any different grade, or entitled to more or less weight, than that of any other person, merely because he is a party.    Whether it is to be regarded the one way or the other, is for the jury to determine.    With reference to this point, it is remarked in the opinion of the Judge before whom the cause was tried, that " he (Knox) is a witness under the statute, and his situation as a party only affects his credibility.    There was nothing in this fact, however, to affect his testimony, and the jury must have been influenced altogether by the probability that his recollection was indistinct, and not at all by the fact that he was a party.    Parties are witnesses in many States, under statutes similar to ours, and I have looked in vain for any authority recognizing the distinction attempted to be made in this case."    We think the Court below entertained the correct view upon this point, and that there was no error in the refusal to grant a new trial on this ground.    If the evidence be regarded as cumulative, it can require the citation of no authorities to show that it cannot be regarded as sufficient ground for a new trial.

The judgment below must be affirmed.